UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MALIKA RILEY,<br><br>    *Plaintiff*<br><br>v.<br><br>CHEVRON PHILLIPS CHEMICAL<br>CORPORATION, LP.<br><br>    *Defendant.* | CIVIL ACTION NO.<br><br>4:17-CV-01332<br><br><br>JURY DEMANDED |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

/s/ *Ellen Sprovach*
Ellen Sprovach
USDC SD/TX No. 22202
Texas State Bar ID 24000672
ROSENBERG & SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
ROSENBERG & SPROVACH

ATTORNEYS FOR PLAINTIFF

1

**TABLE OF CONTENTS**

**Contents**
TABLE OF CONTENTS ............................................................................................................. 2

TABLE OF AUTHORITIES ...................................................................................................... 3

I.    NATURE OF THE CASE .................................................................................................. 4

II.   ISSUES .............................................................................................................................. 4

III.  SUMMARY OF THE ARGUMENT ................................................................................ 4

IV.   FACTS .............................................................................................................................. 5

V.    ARGUMENTS .................................................................................................................. 8

    a.   Summary Judgement Standard .................................................................................. 8

    b.   Ms. Simpson Retaliated against Ms. Riley for taking FMLA ............................................. 8

    c.   Ms. Simpson interfered with Ms. Riley's FMLA ................................................................ 10

    d.   Defendant does not have a legitimate reason for retaliating and interfering with Plaintiff's FMLA ....................................................................................................................................... 11

    e.   A fact issue exists whether Ms. Riley breached her contract ............................................. 14

VI.   CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) ............................................. 9, 10

*Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619 (5th Cir. 2000) ...................................................... 8

*Arismendiz v. Univ. of Texas at El Paso*, 536 F. Supp. 2d 710, 716 (W.D. Tex. 2008) ............... 11

*Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) ................ 10

*Carrell v. L & S Plumbing P'ship, Ltd.*, No. CIV.A. H-10-2523, 2011 WL 3300067, at *3 (S.D. Tex. 2011) ................................................................................................................................... 15

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) .................................................................... 8

*Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013) .......................................... 10

*Delao v. VT San Antonio Aerospace, Inc.*, No. SA-17-CV-00139-ESC, 2018 WL 3603067, at *5 (W.D. Tex. 2018) ................................................................................................................... 11

*Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir. 2001) .......................................................... 9

*Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 559 (S.D. Tex. 2014) ............................. 9

*Jourdan v. Schenker Int'l, Inc.*, 71 F. App'x 308, 310–11 (5th Cir. 2003) ................................... 15

*Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291 (5th Cir. 1987) .................................... 8

*Markwardt v. United Rentals (N. Am.), Inc.*, No. SA-13-CA-627, 2014 WL 12540713, at *2 (W.D. Tex. 2014) ........................................................................................................................ 15

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ......................................... 8

*Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) .............. 9

*McCollum v. Puckett Mach. Co.*, 628 F. App'x 225, 231 (5th Cir. 2015) .................................... 10

*McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000) ............................... 11

*Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) ..................................... 9

*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006) ............................................. 10

*Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.1997) ............................................ 9

**Other Authorities**

Restatement (Second) of Contracts § 77 cmt. a (1981) *311 ........................................................ 15

**Rules**

29 C.F.R. § 825.220(b) ................................................................................................................... 10

Fed. R. Civ. P. 56 (a) ........................................................................................................................ 8

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Malika Riley ("Ms. Riley" or "Plaintiff") files this Motion for Summary Judgment, shows as follows:

## I.      NATURE OF THE CASE

Ms. Riley filed her lawsuit against Defendant Chevron Phillips Chemical Corporation, L.P., ("Defendant" or "Chevron") for Family Medical Leave Act ("FMLA") retaliation and interference.   Defendant transferred and put Plaintiff on a performance plan after she requested FMLA, and ultimately terminated her following her leave, while she was on FMLA and while she had 30 days remaining in her bogus performance plan and after Plaintiff requested FMLA for another surgery. This termination interfered and disallowed Plaintiff to take that protected FML and undergo her surgery.  Defendant filed a counterclaim for a breach of contract that is illusory and comes with unclean hands regarding reimbursement of tuition payments.

## II.     ISSUES

Whether Defendant retaliated against Plaintiff for taking FMLA leave?

Whether Defendant interfered with Plaintiff's FMLA leave?

Whether Plaintiff breached her contract with Defendant?

Whether a valid contract even existed regarding tuition reimbursement payments?

## III.    SUMMARY OF THE ARGUMENT

After a very successful year working for Defendant in 2015, Ms. Riley was transferred out of her role the same day she asked for FMLA leave.  After Ms. Riley requested FMLA and a week before she when out on FMLA leave, Ms. Riley was put on a 90-day performance plan without receiving any previous written warnings about her performance.  While out on FMLA leave,

Defendant contacted Ms. Riley while she was on protected leave and questioned her about her personal activities even though her personal activities have nothing to do with her FMLA.

After Ms. Riley returned to work in October 2016, she was still on intermittent FMLA leave which would not be over until December 28, 2016.  About a month later, while Ms. Riley was still on her 90-day performance plan with 30 days remaining, she informed her supervisor that she would be out at an appointment with a new surgeon and informed her supervisor that she would need FMLA shortly.  A few days later, that same manager requests the termination of Ms. Riley.  Ms. Riley was wrongfully terminated while still working on her 90 day performance plan prior to her anticipated FMLA leave.

Defendant's reasons for firing Ms. Riley were fabricated.  She was terminated, transferred, and put on a performance plan for taking FMLA leave.

### IV.    FACTS

Ms. Riley was hired by Defendant on January 19, 2015 as an HR Business Partner in the Operations department at the Cedar Bayou Facility in Baytown, Texas.[1]   Because of her excellent job performance in her role during 2015,  Defendant awarded her a bonus and said she met expectations..[2] According to her 2015 Performance Review, Ms. Riley added value to her team, was eager to learn, helped create three significant policy updates, and had a positive influence on her team.[3]   After a year of positive feedback and success, Ms. Riley's supervisor changed from Ms. Julie Fleet to Ms. Melissa Simpson.[4]  Prior to the end of 2016, Ms. Simpson terminated Ms. Riley for poor performance.[5]

---

[1] Melissa Simpson Deposition ("Depo.") p.7, Exhibit A; Equifax Sheet, Exhibit B
[2] Simpson Depo. p.43, Exhibit A
[3] 2015 performance Review, Exhibit C
[4] Simpson Depo. pp. 7 and 42, Exhibit A
[5] Simpson Depo. pp. 8, 61, 63, 110, Exhibit A

On February 8, 2016, Ms. Riley's glowing 2015 performance review was released.[6]  Ms. Simpson had joined the team as Ms. Riley's supervisor in January of 2016 and was added to the performance review even though she did not manage Ms. Riley during 2015That same day, Ms. Riley sent an email to Ms. Simpson asking for a leave of absence for an upcoming surgery.[7]  Ms. Simpson testified that she understood that to mean that Ms. Riley was requesting FMLA.[8]  Ms. Simpson now illegitimately claims that Ms. Riley was transferred because of performance concerns, to provide the customer groups the support they needed, and to align the needs with the size of the group with the skill sets of the business partners.[9]  .[10]  Ms. Simpson was more than aware of Ms. Riley's success in her position, yet on February 19, 2016 Ms. Simpson requested permission to transfer Ms. Riley from operations to technical.[11]  Ms. Simpson also claims that Ms. Riley was struggling in the investigation, discipline, compensation, and employee move-related items processes.[12]  However, even with all of these concerns, Ms. Simpson never put it in writing that Ms. Riley was being transferred because she was struggling or needed to improve in these areas.[13] On the same day and immediately after Malika requested FMLA, Simpson moved her.

Ms. Riley went out on FMLA during the summer of 2016 for surgery.[14]  About one week prior to the surgery, and after being notified of the FMLA request,  Ms. Simpson put Ms. Riley on a 90 day performance plan.[15]  She had intended on returning on August 1, 2016, but was forced to take additional leave due to blood clot complications  that forced her into 6 days of

---

[6] 2015 performance Review, Exhibit C
[7] Simpson Depo. pp. 56-57 , Exhibit A; Riley Email February 19, 2016, Exhibit E
[8] Simpson Depo. pp. 56-57 , Exhibit A
[9] Simpson Depo. p. 32, Exhibit A
[10] Simpson Depo. p. 39, Exhibit A; 2015 performance Review, Exhibit C
[11] Simpson Depo. pp.32, 55-56, Exhibit A; Position Statement, Exhibit D
[12] Simpson Depo. p. 45, Exhibit A
[13] Simpson Depo. pp. 31-32, 37, 49 , Exhibit A
[14] Simpson Depo. p. 59, Exhibit A
[15] Simpson Depo. pp. 75-76, Exhibit A

intensive care.[16]  Ms. Riley did not return to the office until October 2016, and she remained on intermittent FMLA leave upon her return.[17]

In September 2016, while Ms. Riley was still out of the office on FMLA leave, Ms. Simpson violated Ms. Riley's Family Medical Leave and contacted Ms. Riley  regarding her about her activities outside of the office.[18]  The call was in reference to a report by a co-worker named Kristin Cothren that Ms. Riley was posting pictures of herself at her son's sports games.[19] Although Ms. Simpson is not a doctor, nor is she in anyway a part of Defendant's FMLA process, she decided she needed clarification on Ms. Riley's restrictions because she inferred that Ms. Riley was doing something that was possibly fraudulent or unlawful.[20]  Although Ms. Simpson is aware that FMLA relates solely to restrictions with employment, she crossed the lines and  called Ms. Riley on September 29, 2016 about her non-work related activities, clearly with a negative perception.[21]

Ms. Riley returned to work in October 2016.[22]  On November 15, 2016, Ms. Riley sent an email to Ms. Simpson stating that she had a doctor's appointment with a new surgeon that coming Friday and that she would need additional Family Medical Leave.[23]  A few days following this email, Ms. Simpson sent Maricela Caballero and email recommending Ms. Riley's termination.[24]  Ms. Riley was terminated on November 28, 2016, a few days after stating that she would be visiting with a new surgeon and needing additional FMLA time.[25]  At the time, Ms.

---

[16] Simpson Depo. p. 60, Exhibit A
[17] Simpson Depo. pp. 60-61 , Exhibit A
[18] Simpson Depo. pp. 68,72, Exhibit A
[19] Simpson Depo. pp.  68, 72-73  , Exhibit A
[20] Simpson Depo. pp. 67, 76, 83, 101, Exhibit A
[21] Simpson Depo. pp. 69 , Exhibit A; Summary of Call about Facebook Post, Exhibit F
[22] Simpson Depo. pp. 60-61 , Exhibit A
[23] Email November 16, 2016, Exhibit G
[24] Simpson Depo. p. 110 , Exhibit A; Termination request, Exhibit H
[25] Simpson Depo. pp. 8 and 120 , Exhibit A

Riley still had about a month left on her performance plan[26] and she had another surgery coming

up that Ms. Simpson was aware could result in her taking more FMLA leave.[27]

## V.      ARGUMENTS

### a.  <u>Summary Judgement Standard</u>

Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.  Fed. R. Civ. P. 56 (a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23

(1986). The movant, "bears the burden of identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf Inc., v. Nike, Inc*.,

485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp., v. Catrett*, 477 U.S 317, 322-25 (1986)).

Under Federal Rule of Civil Procedure 56(a), the moving party bears the initial burden of

"informing the district court of the basis for the motion, and identifying those portions of [the

record] which it believes demonstrates the absence of a genuine issue for trial." *Matsushita Elec.*

*Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.,*

828 F.2d 291 (5th Cir. 1987).  If the moving party meets the initial burden of showing that there

is no genuine issue of material fact, the burden shifts to the nonmoving party to produce

evidence or designate specific facts showing the existence of a genuine issue for trial. *Alan v.*

*Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citation

omitted).

### b.  <u>Ms. Simpson Retaliated against Ms. Riley for taking FMLA</u>

---

[26] The end date of the 90 day performance plan was moved to December 28, 2016 after Ms. Riley went on leave.
Simpson Depo. pp. 76, Exhibit A
[27] Simpson Depo. pp. 8, 63, 111, 114-115, 120-121 , Exhibit A

Defendant, through Ms. Simpson, retaliated against Ms. Riley for taking FMLA when it terminated her employment.  To prove FMLA retaliation, the employee must demonstrate: "1) she was protected under the FMLA; 2) she suffered an adverse employment action; and 3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017); quoting *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). The third element requires the employee to show "there is a causal link" between the FMLA-protected activity and the adverse action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination.  *Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 559 (S.D. Tex. 2014). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Id*.; quoting *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.1997) (citation omitted); *see also Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir. 2001) (noting that a time lapse of four months has been held sufficient to establish a plaintiff's *prima facie* case).

In Ms. Riley's case there is zero time between the request for leave, the leave and the illegal action: MS. RILEY WAS STILL ON FMLA WHEN SHE WAS FIRED.

In Ms. Riley's case, it is clear that she was protected under FMLA because she returned from FMLA in October 2016 and was on intermittent FMLA from the date of her return.[28]  Ms. Riley suffered an adverse employment action when she was terminated on November 28, 2016.[29]

---

[28] Simpson Depo. pp. 60-61 , Exhibit A
[29] Simpson Depo. pp. 8 and 120 , Exhibit A

Finally, Ms. Riley was terminated one month after returning from FMLA leave and during a time in which Ms. Simpson was aware that she could potentially take more FMLA leave and when Ms. Riley was *still on protected Family and Medical Leave.* [30] Therefore, it is clear that Ms. Simpson against Ms. Riley for taking FMLA leave.

### c.  Ms. Simpson interfered with Ms. Riley's FMLA

To establish a *prima facie* case of interference, Plaintiff had to show that (1) she was an eligible employee, (2) she was subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, (5) the Defendant interfered with the benefits to which she was entitled under the FMLA, and (6) she was prejudiced as a result. *McCollum v. Puckett Mach. Co.*, 628 F. App'x 225, 231 (5th Cir. 2015).

To prove an interference claim, a plaintiff "must at least show that [the defendant] interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him]." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013)). An "interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA." *Acker*, 853 F.3d at 788; quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006).

The FMLA does not define "interference," but Department of Labor regulations provide that interference with the exercise of an employee's rights includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. 29 C.F.R. § 825.220(b).

Here, it is clear that Ms. Riley was an eligible employee who was entitled to leave and that Defendant was subject to FMLA requirements because Ms. Riley was allowed FMLA leave

---

[30] Simpson Depo. pp. 8, 60-61, 120-121 , Exhibit A

while employed, and because Defendant worked with third party provided UPMC.[31]  It is also

clear that Ms. Riley properly gave notice of her FMLA leave because she emailed Ms. Simpson

about her leave sometimes months in advance and because she was approved for intermittent

leave when she came back to work in October 2016.[32]  Finally, Ms. Simpson knew that Ms.

Riley was going to have another surgery that would require her to take FMLA prior to

terminating her.[33]  Ms. Simpson interfered with Ms. Riley's FMLA by firing her before she was

able to take it.  If Ms. Riley had been permitted to take her leave, her position would have been

protected and she would have had the opportunity to complete her 90 day performance plan.[34]

Therefore, it is clear that Ms. Simpson interfered with the benefits Ms. Riley was entitled to

under the FMLA.

   d.  **Defendant does not have a legitimate reason for retaliating and interfering with Plaintiff's FMLA**

The Fifth Circuit applies the *McDonnell Douglas* framework to analyze FMLA

retaliation and interference claims that rely on circumstantial evidence.  *Arismendiz v. Univ. of*

*Texas at El Paso*, 536 F. Supp. 2d 710, 716 (W.D. Tex. 2008) *Delao v. VT San Antonio*

*Aerospace, Inc.*, No. SA-17-CV-00139-ESC, 2018 WL 3603067, at *5 (W.D. Tex. 2018).  Once

the plaintiff makes his *prima facie* showing, the burden then shifts to the defendant-employer to

articulate a legitimate, non-discriminatory reason for the adverse employment action. *McInnis v.*

*Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000).  Once the employer articulates

such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of

the evidence that the articulated reason was merely a pretext for unlawful discrimination.  *Id.*

---

[31] Simpson Depo. pp. 60-61, 67-68, 77 , Exhibit A
[32] Simpson Depo. pp. 60-61, 67-68, 77 , Exhibit A; Riley Email February 19, 2016, Exhibit E; Email November 16, 2016, Exhibit G
[33] Simpson Depo. p. 121, Exhibit A
[34] Simpson Depo. p. 69, Exhibit A

Defendant's reason for terminating Ms. Riley is that she was allegedly performing her job poorly.[35]   However, there is plenty of evidence to show that Ms. Simpson recommended the termination of Ms. Riley based on the fact that she was taking FMLA, and that the reason provided by Plaintiff is pretext for retaliation and interference.   First, after having a very successful first year with Defendant, Ms. Riley was transferred to another job position the same day that she informs Defendant she will be taking a leave of absence/FMLA.[36]

Defendant never disciplined or wrote Ms. Riley up for any reason.

Second, one week before Ms. Riley left to go on FMLA leave, she is put on a 90-day performance plan by Ms. Simpson without prior notice warning or discipline. [37] In fact, the most recent performance evaluation of Riley showed that she earned a bonus for her good work and she fully met expectations. The only catalyst and difference were Ms. Riley's FMLA request.

Third, while Ms. Riley was on FMLA leave, Ms. Simpson took it upon herself to contact an employee who was on protected leave and grill her regarding personal activities.  The FMLA process followed by Defendant is that the employee contacts UPMC, it works the case, and also provides notifications to the supervisor and the HR business partner[38]   As a policy, Defendant also asks that the employee check in on a periodic basis with their managers.[39] Ms. Riley was approved by UPMC and regularly checked in with her manager.[40]

 Ms. Simpson **has no part or duties in the FMLA process** that approved Ms. Riley for FMLA nor did she work with Ms. Riley's doctors to figure out her restrictions or leave.[41]  Yet,

---

[35] Termination request, Exhibit H
[36] Simpson Depo. pp.32, 55-56 , Exhibit A; 2015 performance Review, Exhibit C; Position Statement, Exhibit D
[37] Simpson Depo. pp. 75-76, Exhibit A
[38] Simpson Depo. p. 67, Exhibit A
[39] Simpson Depo. pp. 67-68 , Exhibit A; September 14, 2016 email, Exhibit J
[40] Simpson Depo. pp. 67-68, 77 , Exhibit A
[41] Simpson Depo. pp. 77, 81, Exhibit A

she decided that Ms. Riley was possibly doing something fraudulent or unlawful so she got involved.[42]

Even though Ms. Simpson never memorialized in writing any of her problems with Ms. Riley's performance, a transcript was created of the call she had with Ms. Riley concerning her personal activities while on FMLA leave.[43]  Her involvement and decision to have the meeting transcribed indicate that she found it more important to report to the company Ms. Riley's conduct outside work than her alleged failings while at work.   This demonstrates a discriminatory animus to Ms. Riley being on protected Family Medical Leave.

Fourth, Ms. Riley was terminated while she still had 30 days left on her performance plan.[44]  If Ms. Riley was truly terminated because of her poor performance, it would make since for the company to follow its own policies and procedures for terminating her.   Instead, Defendant put Ms. Riley on a 90 day plan that she was not allowed to complete.  Ms. Simpson wholly failed at any time to inform Ms. Riley that she was not meeting her plan.

Suspiciously a few days before Ms. Simpson recommended Ms. Riley for termination; she was informed by Ms. Riley that she would be seeing another surgeon and would need additional leave [45]  Ms. Simpson testified that she knew that Ms. Riley needed more surgery at the time of her termination and that that surgery could result in FMLA leave.[46] Ms. Simpson fired Malika Riley while Malika remained on Family Medical Leave.

Fifth, and finally, after Ms. Riley's termination, Defendant filed paperwork characterizing that Malika she had voluntarily resigned from her position and sent out emails

---

[42] Simpson Depo. p.83, Exhibit A
[43] Simpson Depo. pp.111-112, 116, 120, Exhibit A Summary of Call about Facebook Post, Exhibit F
[44] Simpson Depo. pp. 114-115 , Exhibit A
[45] Email November 16, 2016, Exhibit G
[46] Simpson Depo. p. 121, Exhibit A

saying the same.[47]   These are contrary to Defendant's characterization that Malika was fired for

cause. These documents indicate that Defendant knew that terminating Ms. Riley was improper

and did not want others to know what it had done.

Based on the timing of Ms. Riley's transfer and her first request for FMLA, being placed

on a performance plan one week before leaving for FMLA, Ms. Simpsons refusal to memorialize

any of the issues she was having with Ms. Riley's work performance, her wrongful investigation

into Ms. Riley's leave, Defendants failure to follow their own performance plan, the timing of

Ms. Riley's termination to her future FMLA leave, and sending out false information about her

termination, it is clear that Defendant's reason for terminating Ms. Riley is pretext for FMLA

retaliation and interference.

### e.   A fact issue exists whether Ms. Riley breached her contract

In Defendant's counterclaim, it argues that Ms. Riley breached her contract with Defendant

by failing to repay for tuition reimbursements previously covered by Defendant.   The alleged

contract, that is not a contract, states:

> As evidence by my signature below, I agree to the terms and conditions outlined
> in the Educational Refund Policy.   In addition, I understand and agree that
> Chevron Phillips Chemical Company (the Company) may deduct money from my
> pay, including my final paycheck, to repay amounts received under the
> Educational Refund Policy, if I voluntarily terminate my employment within a
> two (2) year period following my completion of the last undergraduate or
> advanced degree course, or if my employment is terminated for cause (determined
> by the Company in its sole discretion).   Pay includes all sums, benefits or
> payments which the Company may owe to me, including compensation for
> unused vacation, bonus or severance payments.   I further agree to reimburse the
> Company by personal check, cashier's check or money order for any amount
> owed which was not obtained through payroll deduction.[48]

Ms. Riley did not breach the contract with Defendant because this is not a valid contract.

---

[47] Equifax Sheet, Exhibit B; November 28, 2016 email, Exhibit I
[48] Educational Refund Application and Policy, Exhibit K

The elements of a breach of contract claim in Texas are (1) the existence of a valid and enforceable contract, (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff because of the breach. *Markwardt v. United Rentals (N. Am.), Inc.*, No. SA-13-CA-627, 2014 WL 12540713, at \*2 (W.D. Tex. 2014).

A valid contract does not exist between Ms. Riley and Defendant because Defendant's promise is illusory.   When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract. *Carrell v. L & S Plumbing P'ship, Ltd.*, No. CIV.A. H-10-2523, 2011 WL 3300067, at \*3 (S.D. Tex. 2011).  An illusory promise, at common law, "is neither enforceable against the one making it, nor ... operative as a consideration for a return promise *Jourdan v. Schenker Int'l, Inc.*, 71 F. App'x 308, 310–11 (5th Cir. 2003).  Thus, it has long been held that where the condition of a promise lies solely within the promisor's power, the promisor, not being bound to a course of conduct, cannot be said to have entered into a contract. *See* Restatement  (Second)  of  Contracts § 77  cmt.  a (1981) \*311 ("Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise."). *Id*.

Here, Defendant's performance was entirely optional because it could decide at its **"sole discretion" [emphasis ours]** whether or not Ms. Riley was terminated for cause and force her to repay the tuition payments regardless of the events.  Defendant was not bound to its promise to reimburse Ms. Riley for tuition because could decide at any time that her termination could be based on cause and therefore nullify the agreement.  Because Defendant was not bound to its promise in any way, its promise is illusory.  Due to Defendant's illusory promise, there is no valid contract.

15

It is also important to note that a fact issue exists regarding how Ms. Riley was separated from her employment.  According to Defendant's counterclaim, Ms. Riley was terminated for cause, yet the paperwork produced by Defendant indicates that she resigned from her position.[49] Additionally, Ms. Simpson stated in her request to terminate Ms. Riley that she would be provided the opportunity to resign from her employment and sign a release from liability in exchange for not requiring the repayment of her tuition.[50]   A jury must determine the characterization of the separation of Ms. Riley's employment.

It is also a fact issue for the jury whether Defendant had unclean hands by firing Ms. Riley wrongfully and in violation of the Family Medical Leave Act. Such a determination would show that Defendant did not have "clean hands" in firing Plaintiff and Plaintiff would not be responsible to repay any tuition.

Defendant terminated Ms. Riley while she was still working on her 90- day performance plan and within a timeframe in which she had just taken FMLA leave and was planning on taking more and remained on intermittent protected Family Medical Leave.  Ms. Riley was not terminated for cause, she was terminated because of Melissa Simpson's overreach of the law at the very least, a fact issue exists whether Ms. Riley was terminated for cause.

## VI.    CONCLUSION

Based on the above-mentioned facts and evidence, Plaintiff has shown that Defendant retaliated and interfered against Plaintiff for requesting and taking Family Medical Leave. Further, Plaintiff has established that she does not owe a tuition reimbursement.

---

[49] Equifax Sheet, Exhibit B; November 28, 2016 email, Exhibit I
[50] Termination request, Exhibit H

Respectfully submitted,

*/s/ Ellen Sprovach*
Ellen Sprovach
USDC SD/TX No. 22202
Texas State Bar ID 24000672
ROSENBERG & SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
ROSENBERG & SPROVACH

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I served a copy of this document by means of electronic transmission, on the 15th day of February 2019.

Marlene C. Williams
Eversheds Sutherland
1001 Fannin St #3700
Houston, TX 77002
**(713) 470-6100 – Telephone**

*/s/ Ellen Sprovach*
Ellen Sprovach