**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MALIKA RILEY** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:17-cv-01332** |
| | § | |
| **CHEVRON PHILLIPS CHEMICAL** | § | **JURY TRIAL DEMANDED** |
| **CORPORATION LP,** | § | |
| *Defendant.* | § | |

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Dated:  February 15, 2019

Respectfully submitted,

*/s/ Marlene C. Williams*
Marlene C. Williams
State Bar No. 24001872
Fed ID No. 22824
Eversheds Sutherland (US) LLP
1001 Fannin, Suite 3700
Houston, TX 77002
(713) 470-6100
(713) 654-1301 (Fax)
marlenewilliams@eversheds-sutherland.com

**ATTORNEYS FOR DEFENDANT**
**CHEVRON PHILLIPS CHEMICAL**
**COMPANY LP**

## <u>TABLE OF CONTENTS</u>

I.    NATURE AND STAGE OF PROCEEDINGS ....................................................1

II.   STATEMENT OF THE ISSUES...................................................................2

III.  SUMMARY OF THE ARGUMENT ............................................................2

IV.   STATEMENT OF UNDISPUTED FACTS ...................................................3

    A.   Chevron Phillips Chemical hires Riley as a Human Resources Business Partner at its Cedar Bayou Facility in Baytown, Texas ............................................................3

    B.   Riley's Duties and the HRBP Team at Cedar Bayou ................................4

    C.   Riley's Requests for Time Off and Medical Leave ..................................6

    D.   Riley's Performance Issues and Performance Improvement Plan ...........................8

    E.   Riley's Medical Leave .............................................................11

    F.   Simpson Contacts Riley to Inquire About Activities Posted on Facebook ...........12

    G.   Riley's Return from Leave and Continued Performance Issues ........................14

    H.   Riley's Termination ...............................................................15

    I.   Riley Complains of Race Discrimination After Her Termination But Makes No Mention of Any Alleged FMLA Violations ......................................................16

V.    ARGUMENT AND AUTHORITIES .........................................................16

    A.   Summary Judgment Standard .......................................................16

    B.   Riley's Claim for FMLA Interference Fails as a Matter of Law ......................17

        1.   Chevron Phillips Chemical Did Not Deny Riley Any Benefits to Which She Was Entitled Under the FMLA ...........................................................18

    C.   Riley's Claim for FMLA Retaliation Fails as a Matter of Law ......................20

        1.   Riley Cannot Make a Prima Facie Case of Retaliation............................20

        2.   Chevron Phillips Chemical had a Legitimate, Non-Retaliatory Reason for Riley's Termination ....................................................................22

        3.   Riley Cannot Show that Chevron Phillips Chemical's Reason for Terminating Her Employment was Pretext for Retaliation ......................22

    D.   Chevron Phillips Chemical is Entitled to Summary Judgment on its Breach of Contract Claim ....................................................................25

VI.   CONCLUSION AND RELIEF SOUGHT ....................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. American Gen. Fin., Inc.*,
  251 S.W.3d 676 (Tex. App.—San Antonio 2007, pet. granted, judgm't
  vacated w.r.m.)......................................................................................................25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505 (1986)...................................................................17

*Auguster v. Vermillion Parish Sch. Bd.*,
  249 F.3d 332-333 (5th Cir. 2005) .........................................................................23

*Baylor Univ. v. Sonnichsen*,
  221 S.W.3d 632 (Tex. 2007).................................................................................25

*Boudreaux v. Swift Transp. Co., Inc.*,
  402 F.3d 536 (5th Cir. 2005) ................................................................................17

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548 (1986)..............................................................17, 18

*Cox v. Univ. of Texas MD Anderson Cancer Ctr.*,
  2010 WL 3825411 (S.D. Tex., Sept. 28, 2010) ....................................................23

*Forsyth v. Barr*,
  19 F.3d 1527 (5th Cir. 1994) ................................................................................17

*Francisco v. Sw. Bell Tel. Co.*,
  2016 WL 3974820 (S.D. Tex., July 25, 2016).......................................................23

*Grubb v. Sw. Airlines*,
  296 Fed. Appx. 383 (5th Cir. 2008).......................................................................18

*Harville v. Tex. A&M Univ.*,
  833 F.Supp.2d 645 (S.D.Tex. 2011) ......................................................................23

*Jackson v. BNSF Railway Company*,
  No. 4:16-cv-695-A (N.D. Tex., Aug. 1, 2017) ......................................................18

*Lanier v. Univ. of Texas Sw. Med. Ctr.*,
  527 Fed. Appx. (5th Cir. 2013)(unpublished)....................................................18, 21

*Lee v. Kansas City Southern Ry.*,
    574 F.3d 253 (5th Cir. 2009) ...................................................................21

*Lister v. Nat'l Oilwell Varco, L.P.*,
    2013 WL 5515196 (S.D. Tex., Sept. 30, 2013) ......................................18

*Mayberry v. Vought Aircraft Co.*,
    55 F.3d 1086 (5th Cir. 1995) ............................................................23, 24

*Obasogie v. Harris Cty. Hops. Dist.*,
    2013 WL 6916246 (S.D. Tex., Dec. 31, 2013)........................................17

*Olabisiomotosho v. City of Houston*,
    185 F.3d 521 (5th Cir. 1999) ...................................................................18

*Rodriguez v. Eli Lilly and Company*,
    2015 WL 12930424 (S.D. Tex., June 29, 2015)......................................21

*Rodriguez v. Webb Hospital Corp.*,
    234 F.Supp.3d 834 (S.D. Tex. 2017) .................................................20, 21

*Scruggs v. Carrier Corp.*,
    688 F.3d 821 (7th Cir. 2012) ...................................................................18

*Shirley v. Precision Cast Parts Corp.*,
    726 F.3d 675 (5th Cir. 2013) ...................................................................18

*Smith Int'l Inc. v. Egle Group, LLC*,
    490 F.3d 380 (5th Cir. 2007) ...................................................................25

*Smith v. Sweeny Indep. School Dist.*,
    2018 WL 54377621 (S.D. Tex., Oct. 29, 2018)......................................18

*Smith-Schrenk v. Genon Energy Services, L.L.C.*,
    2015 WL 150727 (S.D. Tex., Jan. 12, 2015) ..........................................18

*Strong v. Univ. Healthcare System, L.L.C.*,
    482 F.3d 802 (5th Cir. 2007) ...................................................................23

*TIG Ins. Co. v. Sedgwick James of Wash.*,
    276 F.3d 754 (5th Cir. 2002) ...................................................................17

*Willis v. Roche Biomed. Labs.*,
    61 F.3d 313 (5th Cir. 1995) .....................................................................17

**Statutes**

FMLA ........................................................................................................ *passim*

**Other Authorities**

FEDERAL RULES OF CIVIL PROCEDURE Rule 56........................................................................1, 17

## TABLE OF EXHIBITS AND ADDITIONAL AUTHORITIES

| | |
|---|---|
| Deposition of Melissa Simpson | Exhibit A |
| Declaration of Melissa Simpson | Exhibit B |
| Deposition of Malika Riley | Exhibit C |
| Educational Refund Application and Policy | Exhibit D |
| Email Communications between Riley and Simpson, [CPCRiley181, 184-187] | Exhibit E |
| Riley Dep. Ex. 5*;* Email Communication between Riley and Simpson [Riley000026] | Exhibit F |
| Riley Dep. Ex. 6, Email Communications between Riley and Simpson [Riley000019] | Exhibit G |
| Proposal for Reassignment of HR Business Partner and Assistant Support [CPCRiley000244] | Exhibit H |
| Email Communications between May 2016 and June 2016 [CPCRiley000163-171, 000177-180, 000188-196] | Exhibit I |
| Topics to Discuss with Melissa [CPCRiley128] | Exhibit J |
| Riley Dep. Ex. 1, Performance Improvement Plan, attached hereto as Exhibit K | Exhibit K |
| Riley Dep. Ex. 2, Correct [sic] Action Plan | Exhibit L |
| Text messages between Riley and Simpson [CPCRiley000197-000203] | Exhibit M |
| Email Communication between Riley and Simpson dated Sept. 14, 2016 [RILEY150-151] | Exhibit N |
| Email Communications between Riley and Simpson | Exhibit O |
| Simpson Dep. Ex. 8, Email between Simpson and Maricela Caballero | Exhibit P |
| Riley Dep. at 228:8-231:3; s*ee* Riley Letter to Pete Cella [Riley000163] | Exhibit Q |
| | |
| *Cox v. The University of Texas MD Anderson Cancer Center,*    2010 WL 3825411 (S.D. Tex, Sept. 28, 2010) | Appendix |
| *Francisco v. Southwestern Bell Telephone Company,*    *2016 WL 3974820 (S.D. Tex, July 25, 2016)* | Appendix |
| *Lister v. National Oilwell Varco, L.P.,*    2013 WL 5515196 (S.D. Tex, Sept. 30, 2013) | Appendix |
| *Smith-Schrenk v. Genon Energy Services, L.L.C.,*    2015 WL 150727 (S.D. Tex, Jan. 12, 2015) | Appendix |

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MALIKA RILEY | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:17-cv-01332 |
| | § | |
| CHEVRON PHILLIPS CHEMICAL | § | JURY TRIAL DEMANDED |
| CORPORATION LP, | § | |
| *Defendant.* | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Chevron Phillips Chemical Company LP ("Chevron Phillips Chemical" or ("Company"), incorrectly named Chevron Phillips Chemical Corporation LP, files this Motion for Summary Judgment pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE.  In support, Chevron Phillips Chemical respectfully shows as follows:

### I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiff Malika Riley ("Riley") filed suit on April 28, 2017 alleging that Chevron Phillips Chemical interfered with her rights under the Family and Medical Leave Act ("FMLA") and retaliated against her for exercising her rights under the FMLA.[1]  Chevron Phillips Chemical timely filed an Answer denying Riley's claims in their entirety, and also filed a breach of contract counterclaim against Riley to recover tuition expenses the Company paid on Riley's behalf during her employment, which were due back to the Company upon her termination.[2]  Discovery closed on February 1, 2019 and docket call is currently scheduled for May10, 2019.[3]

---

[1] *See* Complaint ("Compl."), Dkt. No. 1.
[2] *See* Answer, Affirmative and Other Defenses and Counterclaim ("Answer" or "Counterclaim"), Dkt. No. 6.
[3] *See* Order Granting Joint Motion for Continuance, Dkt. No. 17.

## II.     STATEMENT OF THE ISSUES

The issues before the Court are as follows: (1) is there a genuine issue of material fact regarding whether Chevron Phillips Chemical interfered with Riley's rights under the FMLA; (2) is there a genuine issue of material fact regarding whether Chevron Phillips Chemical retaliated against Riley for exercising her rights under the FMLA; and (3) is there a genuine issue of material fact regarding Riley's breach of her agreement to repay the tuition expenses Chevron Phillips Chemical paid on her behalf during her employment, which were due back to the Company upon the termination of her employment for cause?

## III.     SUMMARY OF THE ARGUMENT

Chevron Phillips Chemical is entitled to summary judgment on all of Riley's claims. First, Riley does not have a viable FMLA interference claim because the evidence conclusively shows that she (1) was granted and took all the FMLA leave she requested, (2) returned to the exact same position she held before her leave, and (3) was terminated before a "potential" second leave only because she continued to have performance issues after being placed on a Performance Improvement Plan ("PIP").  Under prevailing law, Riley did not have an absolute right to start FMLA leave and there is no summary judgment evidence that Chevron Phillips Chemical ever denied her any benefits to which she was entitled under the FMLA.  Accordingly, Chevron Phillips Chemical is entitled to summary judgment on Riley's FMLA interference claim.

Second, Riley cannot establish a prima face case of FMLA retaliation because she does not have any evidence that the Company terminated her employment because of her leave or treated any comparators more favorably under nearly identical circumstances, which is a critical element of her prima facie case.  However, even if Riley could get past the prima facie stage, the summary judgment record shows that Chevron Phillips Chemical terminated her employment because of her ongoing performance issues, which is a legitimate non-retaliatory reason, and Riley does not have

2

any evidence of pretext.  As described fully below, Riley had numerous performance issues – both before and after her medical leave – that caused her supervisor to coach her, place her on a PIP and ultimately terminate her employment.  Under prevailing law, Riley's FMLA leave did not shield her from disciplinary action for these performance issues.  Moreover, neither the timing of Riley's termination in relation to her medical leave nor her disagreement with her supervisor's assessment of her performance is sufficient to prove pretext.  Accordingly, Riley's FMLA retaliation claim fails as a matter of law and Chevron Phillips Chemical is entitled to summary judgment.

Chevron Phillips Chemical is also entitled to summary judgment on its breach of contract claim because there is no genuine issue of material fact regarding Riley's obligation to repay the tuition expenses in light of her termination, or her failure to do so.

## IV.    STATEMENT OF UNDISPUTED FACTS[4]

### A.    Chevron Phillips Chemical hires Riley as a Human Resources Business Partner at its Cedar Bayou Facility in Baytown, Texas

Chevron Phillips Chemical is a chemical manufacturing company with facilities throughout the world, including its Cedar Bayou facility ("Cedar Bayou") in Baytown, Texas.[5] During the time period at issue in this case, Cedar Bayou employed over 740 employees, including a Human Resources ("HR") team that provided personnel support to the various groups within the facility.[6]

---

[4] These facts are undisputed for purposes of this Motion.
[5] See Deposition of Melissa Simpson, attached hereto as Exhibit A, at p.7:10-11.  Citations to the Deposition of Melissa Simpson will be referred to herein as "Simpson Dep. at ____."  Certain exhibits to Simpson's deposition will be referred to herein as "Simpson Dep. Ex. ____, [Name of Document], attached hereto as ____."
[6] See Declaration of Melissa Simpson ("Simpson Decl."), attached hereto as Exhibit B.

Chevron Phillips Chemical hired Riley as a Human Resources Business Partner ("HRBP") at Cedar Bayou in January 2015.[7]  Within a month of her employment, Riley submitted an Educational Refund Application seeking reimbursement from the Company for certain expenses she paid towards an online Master's degree program.[8]  Pursuant to the Company's Educational Refund Policy and Riley's application, the Company agreed to reimburse a portion of the "approved and documented costs" of some of Riley's educational expenses.[9]  Riley, in turn, agreed as follows:

> [a]s evidenced by my signature below, I agree to the terms and conditions outlined in the Educational Refund Policy.  In addition, I understand and agree that Chevron Phillips Chemical Company (the Company) may deduct money from my pay, including my final paycheck, to repay amounts I received under the Educational Refund Policy, if I voluntarily terminate my employment within a two (2) year period following my completion of the last undergraduate or advanced degree course, or if my employment is terminated for cause (determined by the Company in its sole discretion) . . . I further agree to reimburse the Company by personal check, cashier's check or money order for any amount owed which was not obtained through payroll deduction.[10]

As evidenced by her signature, Riley specifically agreed to repay the amounts she received under the Policy if the Company terminated her employment for cause.[11]  Between February 2015 and November 2016, Chevron Phillips Chemical paid Riley a total of $17,000.00 in educational expenses pursuant to their agreement.[12]

### B.    Riley's Duties and the HRBP Team at Cedar Bayou

During Riley's employment, the Cedar Bayou HR team generally consisted of an HR Manager, several HRBPs who each serviced a different client group at the facility, and several

---

[7] See Deposition of Malika Riley, attached hereto as Exhibit C, at 29:9-11, 40:1-3, 17:23.  Citations to the Deposition of Malika Riley will be referred to herein as "Riley Dep. at ____."  Certain exhibits to Riley's deposition will be referred to herein as "Riley Dep. Ex. ____, [Name of Document], attached hereto as Ex. ____."
[8] Riley Dep. at 246:7-17; *see* Riley Dep. Ex. 9, Educational Refund Application and Policy, attached hereto as Ex. D.
[9] *See* Exhibit D.
[10] *Id.*
[11] *Id.*
[12] *See* Simpson Decl., Ex. B.

4

assistants who provided support to the HR Manager and the HRBPs.[13]  Riley initially supported

the Operations group, which included more than 300 employees and had a high volume of work.[14]

As an HRBP, Riley was responsible for a variety of HR duties in support of her client group,

including employee relations, investigations, compensation and benefits issues, and other "typical

HR generalist" duties.[15]

From January 2015 until January 2016, Julie Fleet ("Fleet") was the HR Manager and

Riley's supervisor at Cedar Bayou.[16]  Riley described Fleet as a "great manager" who was very

open and communicated well.[17]  Riley always felt comfortable with and supported by Fleet and

could talk to her "at any given time."[18]  Fleet gave Riley a positive performance rating for the 2015

performance year.[19]  Fleet left Cedar Bayou for another position at the Company in January 2016.[20]

Shortly after learning of Fleet's impending departure, Riley learned that Melissa Simpson

("Simpson") would take over the role of HR Manager at Cedar Bayou.[21]  Riley did not have any

significant prior experience with Simpson, but heard from others that Simpson was "hard,"

"difficult at times," and not "the easiest person to work with."[22] According to Riley, there was "a

lot of apprehension amongst HR employees [and] operations employees" about Simpson because

of her reputation for having a demanding management style.[23]  Despite this information, Riley

---

[13] Riley Dep. at 41:9-20, 76:16-23; 77:24-78:8; Simpson Decl., Ex. B.
[14] Riley Dep. at 40:17-23; 44:22-45:6; Simpson Dep. at 36:3-9.  The other two HRBPs, Kristin Cothren and Chris Reed, supported the other groups, with Cothren initially supporting the Technical group before her reassignment to the Operations group, and Reed supporting the Maintenance group and part of Corporate.  Simpson Decl., Ex. B.
[15] Riley Dep. at 43:15-46:21.
[16] Riley Dep. at 42:24-43:3; 60:18-24.
[17] Riley Dep. at p. 65:5-19.
[18] *Id.*
[19] Simpson Dep. at 42:9-12.
[20] Riley Dep. at 61:6-12; 65:20-66:19.
[21] *Id.*
[22] Riley Dep. at p. 67:16-68:1; 68:23-69:2.
[23] Riley Dep. at 69:3-70:16; 72:18-22.

thought she and Simpson got along well during the first few months of Simpson's tenure as HR Manager.[24]

### C.    Riley's Requests for Time Off and Medical Leave

Sometime prior to January 2016, Riley experienced problems with her foot that required surgery.[25]  Riley requested FMLA leave for the surgery, which the Company approved through its third-party administrator, the University of Pittsburgh Medical Center ("UPMC").[26]   Riley's surgery was scheduled for July 2016, with an anticipated leave of six to eight weeks.[27]   Riley first notified Simpson of her plans for medical leave shortly after Simpson arrived, in approximately March 2016.[28]  Simpson was "okay with" and "didn't seem to have a problem" with Riley's plans for medical leave.[29]  Simpson never made any negative comments about Riley's plans for medical leave.[30]   In fact, the only time Riley and Simpson ever discussed Riley's medical leave was to coordinate plans to have Riley's work covered during her absence, which Riley thought was entirely appropriate given how busy they were in the HR Department at the time.[31]   Nevertheless, even before her leave started Riley felt pressure to return to work as soon as she could because Simpson "seemed concerned" about her impending absence.[32]   The HR Department had "a lot going on" and Simpson's "delivery made [Riley] feel like [she] should do everything that [she] can to get back sooner than later," even though Simpson never asked, suggested or demanded that she shorten her leave in any respect.[33]   Incidentally, Riley claims that her co-worker, Cothren, also

---

[24] Riley Dep. at 102:3-18.
[25] Riley Dep. at 113:3-16.
[26] Riley Dep. at 108:4-109:16; 265:9-19.
[27] Riley Dep. at 108:4-109:16, 113:3-16.
[28] Riley Dep. at 108:4-7.  Riley does not recall if UMPC had approved her request for leave at this time, but did not have any issues getting the request approved.  *Id.*
[29] Riley Dep. at 111:5-15.
[30] Riley Dep. at 112:3-19; 198:12-16.
[31] Riley Dep. at 110:15-114:2.
[32] Riley Dep. at 112:3-19.
[33] Riley Dep. at 114:3-116:23.

took medical leave in May or June 2016.[34]  Riley believes that Cothren also felt pressure to return

to work early even though Simpson never asked, suggested or demanded that she do so.[35]

In the months leading up to her medical leave, Riley also requested numerous days off

from work for others reasons, which Simpson *always* approved.[36]  For example, between February

15, 2016 and February 25, 2016, Riley left work early at least three times, with Simpson's

approval, to take her sons to the doctor and to attend a sports ceremony for one of her sons.[37]  In

early March 2016, Riley took time off, with Simpson's approval, to take her mother to a medical

procedure.[38]  Later in March 2016, Riley asked Simpson to leave early again to take her pet to the

veterinarian, which Simpson also approved.[39]  Notably, some of these requests were "same day"

requests, which Simpson still obliged.[40]  Simpson also approved multiple vacation requests for

Riley, including on March 16 and 17, 2016, May 7 through 11, 2016, and November 21 and 22,

2016, among other dates.[41]  Riley claims that Simpson was "frustrated" by these requests, even

though the contemporaneous written communications between them tell a completely different

story.[42]  For example, when Riley needed to leave to take her son to a doctor's appointment,

Simpson told her "[p]lease do what you need to do so you can have him taken care."[43]  Similarly,

when Riley requested time off for a vacation, Simpson told her "enjoy your trip and time away."[44]

---

[34] Riley Dep. at 73:6-75:6.
[35] *Id*.  Notably, while Riley tries to connect her termination to her medical leave, there is no summary judgment evidence that Simpson ever disciplined Cothren for performance issues or any other reason.
[36] Riley Dep. at 107:15-108:3.
[37] Riley Dep. at 102:19-103-1; *see* Email Communications between Riley and Simpson, [CPCRiley181, 184-187], attached hereto as Ex. E (also attached as Exhibit 1 to Simpson Declaration).
[38] Riley Dep. at 105:15-106:13; *see* Ex. E [CPCRiley187].
[39] *See* Riley Dep. Ex. 5; *see* Email Communication between Riley and Simpson [Riley000026], attached hereto as Ex. F.
[40] *See* Riley Dep. at 107:15-108:3; *see also* Ex. F.
[41] Riley Dep. at 210:13-211:20, *see* Riley Dep. Ex. 6, Email Communications between Riley and Simpson [Riley000019], attached hereto as Exhibit G; *see also* Riley Dep. at 207:5-208:25 (discussing other days off Simpson approved).
[42] Riley Dep. at 105:21-106:14; 210:7-211:20.
[43] *See* Ex. E [CPCRiley181].
[44] Riley Dep. at 211:16-212:25; *see also* Ex. G.

### D.    Riley's Performance Issues and Performance Improvement Plan

From early January 2016 to mid-February 2016, Simpson spent time assessing the strengths and weaknesses of the group she was now charged with supervising.[45]  Based on her observations, Cothren appeared to be the "go to HR Business Partner" because she was able to successfully and independently navigate complex and intricate employee relations issues, among other things.[46] Riley, however, seemed to struggle with some of the basic processes required in her role, often requiring assistance from her team members to complete some of her duties.[47]

In an effort to help Riley understand, learn and reinforce the various processes required in her role, as well as to better align the HR team members with the respective client groups, Simpson decided to reorganize the Department and reassign some of the HRBPs.[48]  Simpson reassigned Riley to the Technical group, which was much smaller and less demanding than the Operations group, and Cothren to the Operations group.[49]  Simpson specifically noted her observation that Riley "need[ed] the opportunity to work with a customer group that allows her to more thoroughly understand and strengthen her ability to support the CPChem HR processes and systems."[50]

Following the reassignment, Riley struggled in certain key areas of responsibility and her performance issues reached a crescendo in May and June 2016 when she committed a number of errors, including:

- Between May 3, 2016 and May 10, 2016, Riley submitted incorrect salary information regarding an employee, which Simpson had to correct;

- Around May 18, 2016, Riley failed to provide resolution on a pending employee move and sent it to her customer group for resolution, prompting complaints to Simpson about her conduct.  In one notable exchange, Ron Zimmer, Technical

---

[45] Simpson Dep. at 32:4-36:9.
[46] *See* Proposal for Reassignment of HR Business Partner and Assistant Support [CPCRiley000244], attached hereto as Ex. H (also attached as Exhibit 1 to Simpson Declaration).
[47] Simpson Dep. at 32:4-36:9*; see* Ex. H.
[48] *Id.*
[49] *Id.*; Riley Dep. at 162:10-164:4.
[50] *See* Ex. H.

Manager, provided Simpson with "examples of [the] struggles" they had with Riley and told Simpson that they had been waiting over a month for a status update from her when, in fact, she had not resolved the issue;

- Sometime around May 19, 2016, Riley contacted HR staff at Company headquarters with urgent requests that were not their responsibility, prompting complaints to Simpson about her conduct;

- Between May 23, 2016 and May 25, 2016, Riley failed to timely issue notifications regarding Summer Interns and other employee announcements, which the Plant Manager inquired about and brought to Simpson's attention;

- On May 25, 2016, Riley failed to timely update the status of two investigations in the Company's EthicsPoints database, prompting an inquiry to Simpson from Beth Roberts ("Roberts"), the Company's HR Compliance Manager;

- On June 14, 2016, Riley had trouble resolving an employee medical issue for her client group and, instead, relied on them to identify solutions; and

- Between January 2016 and June 2016, Riley had multiple instances of cell phone usage during team meetings.[51]

Notably, Riley admits that she made her "share of mistakes" during this time period, but she dismisses them as minor infractions that everyone else committed.[52]  Riley found Simpson's critiques to be "nitpicky" but not at all unique to her because Simpson was demanding of the entire HR team, not just Riley.[53]

Simpson did not issue any formal written warnings to Riley for her multiple performance issues, but the email communications document them well.[54]  Moreover, Riley and Simpson both confirm that Simpson had numerous "coaching" discussions with Riley throughout this period, although Riley did not think they were "disciplinary" in nature.[55]  For example, in May 2016

---

[51] *See* Email Communications between May 2016 and June 2016 [CPCRiley000163-171, 000177-180, 000188-196], attached hereto as Ex. I (also attached as Exhibit 1 to Simpson Declaration).

[52] Riley Dep. at 85:15-23; 87:7-88:25; 89:22-90:14; 146:9-14.  There is no summary judgment evidence of any specific mistakes Cothren or Reed made or whether they are in any way comparable to Riley's cumulative performance issues.

[53] Riley Dep. at 90:2-19; 220:8-14; 223:11-224:3.

[54] Simpson Dep. at 31:23-25; *see* Ex. I.

[55] Riley Dep. at 86:5-16; 88:17-25; Simpson Dep. at 26:8-28:9; 31:1-8; 111:15-21.

Simpson counseled Riley about her performance, including errors in her written communications and on personnel documents, as well as her handling of ongoing projects with her client group.[56] After this May 2016 coaching discussion, Simpson and Riley had yet another conversation during which Simpson told Riley that she would be "looking at ways to help [Riley] improve."[57] Approximately one week later, on June 28, 2016, Simpson met with Riley and presented her with a Performance Improvement Plan ("PIP").[58]  The PIP surprised Riley even though Simpson had previously informed Riley that that she "was going to be putting [her] on a performance improvement plan or coming up with ways to work with [Riley] to help correct issues or concerns."[59]  Notes from a June 22, 2016 meeting between Riley and Simpson confirm that they reviewed Riley's performance issues and the quality of her deliverables and would meet "next week to discuss further."[60]

The PIP identified a number of deficiencies, including Riley's (1) inability to consistently execute key job responsibilities in an accurate and timely matter; (2) lack of demonstrated accountability and ownership; (3) failure to meet deadlines and communicate effectively; and (4) lack of attention due to use of personal phone in HR and Customer meetings.[61]

The PIP was scheduled to last 90 days, with a review every two weeks.[62]  The PIP specifically informed Riley that it did not change her "at-will employment status" or guarantee her employment for any specific period of time.[63]  As evidenced by her signature on the PIP, Riley

---

[56] Riley Dep. at 86:5-88:25; 95:15-96:3.
[57] Riley Dep. at 96:8-18; 97:11-16.
[58] Riley Dep. at 82:15-83:15; 97:17-20.
[59] *Id.*  Reed attended the meeting as the HR representative for the corporate group, which was his designated client group at the time.  Simpson Dep. at 11:7-10.
[60] *See* Topics to Discuss with Melissa [CPCRiley128], attached hereto as Ex. J (also attached as Ex. 1 to Simpson Declaration).  The PIP meeting occurred approximately one week later, on June 28, 2016.
[61] *See* Riley Dep. Ex. 1, Performance Improvement Plan, attached hereto as Exhibit K.
[62] *Id.*
[63] *Id.*

also understood that she was "expected to make immediate and ongoing improvement while on the PIP, and a fully successful performance must be continually sustained once expectations [were] met."[64]

Following the June 28, 2016 PIP meeting, Riley submitted a memo to Simpson entitled "Correct [sic] Action Plan," which outlined her plan for improving her performance.[65]   In the memo, Riley did not dispute any of Simpson's critiques but instead acknowledged that she would make the necessary improvements outlined in the PIP, including (1) complete her tasks accurately and in a timely manner, (2) provide more feedback to her client group, (3) be more proactive with her employee relations cases and work on proposing better guidance and recommendations to her client group and (4) work to be more independent in her tasks, among other things.[66]   Riley also noted that she had already made "necessary changes" to some of her performance deficiencies, including with respect to her phone usage in meetings and better knowledge of her client group.[67]

### E.      Riley's Medical Leave

Riley started her medical leave on July 7, 2016.[68]   She was initially expected to be on leave for approximately six to eight weeks, with a return date in early to mid-August.[69]   Unfortunately, Riley experienced additional medical complications and was re-admitted to the hospital for several days.[70]  Following her recovery from these additional complications, Riley was cleared to resume work from home on a part-time basis from August 29, 2016 to September 19, 2016, and then on a

---

[64] *Id.*
[65] *See* Riley Dep. Ex. 2, Correct [sic] Action Plan, attached hereto as Ex. L.   In the memo, Riley specifically acknowledges that she had already corrected the issues surrounding her cell phone usage, which Simpson identified as one of her performance deficiencies.
[66] *Id.*
[67] *Id.*
[68] Riley Dep. at 117:4-10.
[69] *Id.*
[70] Riley Dep. at 119:24-120:10.

full time basis from September 20, 2016 to October 10, 2016.[71]  She was cleared and returned to work in the office on October 11, 2016.[72]

Throughout her leave, Riley kept Simpson informed of her status by telephone, email and text messages.[73]  Riley claims that Simpson was frustrated about her absence from work and constantly inquired about her status and expected return date.[74] The written communications between Riley and Simpson reflect something entirely different, however.  Between July 10, 2016 and August 16, 2016, Riley and Simpson communicated via text messages a number of times where Simpson told her: (1) she was "[g]lad to hear [Riley] was comfortable and everything went well," (2) it was "great news" that Riley had been released from the hospital and asked her if she was feeling better, and (3) to be careful and take care of herself, noting that she wanted Riley to rest and follow doctors' orders and did not want to bother Riley. [75]  Riley acknowledges that Simpson did "ask how [she] was doing on occasion," but it "seemed at certain instances that her concern was more about the workload."[76]

## F.    Simpson Contacts Riley to Inquire About Activities Posted on Facebook

On September 14, 2016, after Riley had been released to work from home on a part-time basis, Riley emailed Simpson and informed her that she was unable to attend a previously-scheduled HR Development Day program because she was still recovering and could not "drive more than 15 minutes away from [her] home or outside of Baytown due to significant swelling and pain in [her] right foot."[77]  Riley went on to explain that "with [her] recent complications, *even*

---

[71] *Id.*
[72] Riley Dep. at 197:6-15.
[73] Riley Dep. at 124:6-12.
[74] Riley Dep. at 131:4-135:13.
[75] *See* Text messages between Riley and Simpson [CPCRiley000197-000203], attached hereto as Ex. M (also attached as Exhibit 1 to Simpson Declaration).
[76] Riley Dep. at 129:3-6.
[77] *See* Email Communication between Riley and Simpson dated Sept. 14, 2016 [RILEY150-151], attached hereto as Ex. N.

*riding in a vehicle more than 30 minutes is a challenge and presents issues for [her]*."[78]  Based on this information and other updates Riley provided to her, it was Simpson's understanding that Riley was restricted to rest at home with a requirement to keep her foot elevated.[79]

Approximately two weeks later, Riley's co-worker Cothren notified Simpson that Riley had several Facebook posts showing her participation in various events away from home, including a Texans football game, a high school reunion and her sons' sporting events.[80]  Simpson had not dealt with this type of issue before and considered it unusual, so she contacted her supervisor, Maricela Caballero ("Caballero"), to seek guidance on how to move forward.[81]  After consulting with Caballero, Simpson and Reed subsequently contacted Riley to discuss the issue and get her input.[82]  Simpson explained that the phone call was intended to obtain clarification about Riley's activities as it related to her medical restrictions because "abiding by restrictions is part of [the Company's] compliance for medical leave."[83]  Riley acknowledges that Chevron Phillips Chemical had an interest in confirming that she was "following the requirements of [her] leave," and agreed that getting her input was part of that process.[84]  However, she believes that someone else, not Simpson and Reed, should have contacted her to discuss any questions the Company had about the issue and her compliance.[85]  Riley "felt like [she] was being interrogated" during the call.[86]  However, Simpson was simply trying to understand and clarify Riley's activities vis-à-vis her obligation to comply with her medical restrictions during her FMLA leave.[87]  Riley admits that

---

[78] *Id.* (emphasis added).
[79] Simpson Dep. at 82:11-15; 107:20-23; *see* Simpson Dep. Ex. 10, Email Communication between Riley and Simpson [Riley00043-44], attached hereto as Ex. N.
[80] Simpson Dep. at 72:4-24.
[81] Simpson Dep. at 74:15-75:6.
[82] Simpson Dep. at 75:9-16; 76:10-77:8.
[83] *Id*.
[84] Riley Dep. at 193:14-24.
[85] Riley Dep. 190:24-191:4; 194:12-15.
[86] Riley Dep. at 189:5-15.
[87] Simpson Dep. at 76:19-77:2; 6-8.

the Company did not take any action against her in connection with the Facebook issue and the subject was never raised again after the call.[88]

### G.     Riley's Return from Leave and Continued Performance Issues

Riley returned to work on October 11, 2016 and was reinstated to her same job as HRBP for the Technical group.[89]  Upon Riley's return, Simpson resumed Riley's PIP on the same terms but extended the completion date to December 28, 2016 to account for her absence during her medical leave.[90]  Simpson and Riley met on a regular basis to discuss her progress and performance during the PIP.[91]  Riley claims that during this timeframe she informed Simpson that she "would need potentially to be out on leave again" in December 2016 to have a metal plate removed from her foot.[92]

Riley claims that she did not receive any negative feedback from Simpson between October 2016 and her termination on November 28, 2016.[93]  However, between her return in early October 2016 and late November 2016, Riley continued to repeat some of the same performance issues that pre-dated her medical leave and led to her PIP in the first place.  For example, on October 21, 2016, Riley submitted a salary proposal for an employee that would have undercompensated the employee, telling Simpson that she may have misunderstood the criteria in the compensation guidelines.[94]  On October 30, 2016, Riley had issues drafting recommendations for an employee relocation, causing Simpson to direct Riley to the policy documents and advising her to prepare a proposal in support of her recommendation in accordance with Company policy.[95]  On November

---

[88] Riley Dep. at 194:21-195:2.
[89] Riley Dep. at 197:10-15; 259:3-6.
[90] Riley Dep. at 137:15-21; 138:12-15; 273:16-24.
[91] Riley Dep. at 139:12-16; 142:25-143:23.
[92] Riley Dep. at 178:1-18.
[93] Riley Dep. at 199:21-200:6.
[94] *See* Email Communications between Riley and Simpson, attached hereto as Ex. O (also attached as Exhibit 1 to Simpson Declaration).
[95] *See* Exhibit O.

14

18, 2016, Riley was delinquent in updating the status of an employee investigation in the EthicsPoint database, prompting more questions from Roberts about the status.[96]

But things ultimately came to a head with Riley's mishandling of an employee investigation that started on October 11, 2016. Despite considerable assistance from Simpson, Cothren and Reed, Riley struggled to complete the investigation in a timely manner and produce a completed fact-finding report. For example, on October 31, 2016, Riley produced a draft investigation report that (1) contained grammatical errors, (2) did not address key questions, (3) failed to identify the dates and interviewers in an organized fashion and (4) did not include a formal interview of the complaining party.[97] As of November 17, 2016, Riley was still working on the report and admits that Simpson informed her that she was not delivering as expected on the investigation.[98] In fact, Simpson recalls spending a considerable amount of time during one of their meetings discussing Riley's handling of the investigation.[99] By the end of this meeting, Simpson had reached the conclusion that Riley's performance was simply not improving enough to justify a continuation of the PIP or her employment.[100]

### H.    Riley's Termination

On November 20, 2016, Simpson emailed her supervisor with a recommendation to terminate Riley's employment.[101] In the email, Simpson explained that Riley was still struggling to execute fundamental HRBP tasks in a consistent and timely manner.[102] Simpson specifically noted Riley's continued inability to conduct investigations and other duties without support from

---

[96] *See* Exhibit O.  Riley had similar problems in May 2016.  *See* Ex. I.
[97] *See* Exhibit O.
[98] *See* Exhibit O; Riley Dep. at 225:3-226:6.  This directly contradicts Riley's other claim that she did not receive any negative feedback from Simpson during the months of October and November 2016.  *See* Riley Dep. at 200:4-6.
[99] *See* Simpson Decl., Ex. B.
[100] *Id.*
[101] *See* Simpson Dep. Ex. 8, Email between Simpson and Maricela Caballero, attached hereto as Ex. P.
[102] *Id.*

other HR team members.[103]   Simpson ultimately received approval to proceed with Riley's termination in light of her ongoing performance problems and overall lack of improvement during the PIP.[104]   On November 28, 2016, Simpson and Reed met with Riley and informed her of the termination.[105]   Notably, the employee investigation that Riley started on October 11, 2016 was still incomplete at the time of her termination.[106]

### I.   Riley Complains of Race Discrimination After Her Termination But Makes No Mention of Any Alleged FMLA Violations

After her termination, Riley submitted two complaints against Simpson – one to the Company's EthicsPoint Hotline and the other to Pete Cella, the Company's Chief Executive Officer at the time.[107]   In her note to Cella, Riley indicated that she "truly believe[d] that [Simpson] targeted [her] because of [her] race and because she wanted to get one of her good friends back with her a [sic] Cedar in [Riley's] place."[108]   Notably, she makes no mention at all of any alleged FMLA interference or retaliation, which are the sole bases for her claims in this lawsuit.[109]

## V.      ARGUMENT AND AUTHORITIES

### A.    Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, the records show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[110]   "Importantly, 'the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be

---

[103] *Id.*
[104] *See* Simpson Decl., Ex. B.
[105] Riley Dep. at 198:25-199:3.  At the time of her termination, the Company offered to allow Riley to resign in lieu of termination and offered her a separation agreement, all of which she eventually declined.  Riley Dep. at 250:5-251:25.
[106] Riley Dep. at 58:8-59:3.
[107] Riley Dep. at 228:8-231:3; s*ee* Riley Letter to Pete Cella [Riley000163], attached hereto as Ex. Q.
[108] *Id.*
[109] *Id.*
[110] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986); FED. R. CIV. P. 56(a)

*genuine* and *material.*'"[111]   Facts are material when the resolution of those facts "might affect the outcome of the suit under the governing law . . ."[112]   Riley's unsubstantiated opinions, beliefs and feelings are not competent summary judgment evidence.[113]   Similarly, her "[c]onclusory allegations and denials, speculation, improbable inferences . . ." and "legalistic argumentation" are not sufficient to defeat summary judgment.[114]   Rather, to survive summary judgment, Riley must ultimately produce specific evidence upon which a jury could reasonably base a verdict in her favor on the claims asserted.[115]   Importantly, the Court is only required to construe evidence in Riley's favor "when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts."[116]   If Riley fails to show a genuine issue of material fact on an essential element of her claims, summary judgment for Chevron Phillips Chemical is warranted.[117]

As explained below, summary judgment is warranted here because Riley cannot meet her burden on any of her claims against Chevron Phillips Chemical, and there is no genuine issue of material fact regarding Chevron Phillips Chemical's breach of contract claim against Riley.

### B.     Riley's Claim for FMLA Interference Fails as a Matter of Law

To establish FMLA interference, Riley must ultimately show (1) she was an eligible employee; (2) Chevron Phillips Chemical was subject to the FMLA's requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take leave; and (5) Chevron Phillips

---

[111] *Obasogie v. Harris Cty. Hops. Dist.,* 2013 WL 6916246, *1 (S.D. Tex., Dec. 31, 2013)(quoting *Willis v. Roche Biomed. Labs.,* 61 F.3d 313, 315 (5th Cir. 1995))(emphasis added).

[112] *Willis v. Roche Biomed. Labs.,* 61 F.3d 313, 315 (5th Cir. 1995).

[113] *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994).

[114] *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir. 2002); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

[115] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

[116] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *Smith v. Sweeny Indep. School Dist.,* 2018 WL 54377621 (S.D. Tex., Oct. 29, 2018).

[117] *Celotex,* 477 U.S. at 322.

Chemical denied her the benefits to which she was entitled under the FMLA.[118]   Under Fifth Circuit jurisprudence, a plaintiff does not have a viable FMLA interference claim when she receives the requested leave and returns to the job she held prior to the leave.[119]   Moreover, an employer does not interfere with an employee's rights under the FMLA by disciplining the employee, including with termination, prior to the start of a requested FMLA leave.[120]   Finally, courts have made it clear that an employer does not interfere with an employee's rights under the FMLA simply by contacting the employee during leave, particularly to investigate suspected issues of non-compliance or fraud.[121]

### 1.   Chevron Phillips Chemical Did Not Deny Riley Any Benefits to Which She Was Entitled Under the FMLA

Riley's interference claim appears to be twofold, including that the Company interfered with her leave when Simpson and Reed contacted her to inquire about the Facebook posts and when it terminated her employment before she was able to start another "potential" FMLA leave in December 2016.  Both of these arguments fail.  First, it is unequivocal that Riley returned from medical leave in October 2016 to the same position with the same duties as before her leave.  Second, while Riley claims that she "felt" pressure to return to work as soon as possible, she readily admits that she continued with her medical leave until her doctor actually cleared her to return to work.  She also admits that Simpson never asked or demanded that she return to work sooner than she was able to do so.   Indeed, the summary judgment record is replete with written

---

[118] *Lanier v. Univ. of Texas Sw. Med. Ctr.,* 527 Fed. Appx., 312, 316 (5th Cir. 2013)(unpublished)(citing *Donald v. Sybra, Inc.,* 667 F.3d 757, 761 (6th Cir. 2012).

[119] *Lister v. Nat'l Oilwell Varco, L.P.,* 2013 WL 5515196 at *29 (S.D. Tex., Sept. 30, 2013)(citing *De La Garza-Crooks v. AT&T,* 2001 WL 361099, at *1 (5th Cir. Mar. 22, 2001)(per curiam).

[120] *Shirley v. Precision Cast Parts Corp.,* 726 F.3d 675, 683 (5th Cir. 2013); *Grubb v. Sw. Airlines*, 296 Fed. Appx. 383, 391 (5th Cir. 2008).

[121] *Scruggs v. Carrier Corp.,* 688 F.3d 821 (7th Cir. 2012); *see also Smith-Schrenk v. Genon Energy Services, L.L.C.,* 2015 WL 150727 (S.D. Tex., Jan. 12, 2015)(confirming there is no right to be left alone or relieved from responding to employer inquiries during FMLA leave); *Jackson v. BNSF Railway Company,* No. 4:16-cv-695-A, (N.D. Tex., Aug. 1, 2017).

communications between Riley and Simpson that show Simpson's conduct and communications with Riley were entirely appropriate and even encouraging. The fact that Riley subjectively believed that Simpson wanted her to return to work early is not sufficient summary judgment evidence of FMLA interference, particularly when she admits that Simpson never made any such requests or demands and she continued on her leave until her doctor cleared her to return to work.

Further, while Riley describes the Facebook phone call as an "interrogation," she admits that she continued with her medical leave after the phone call from Simpson and Reed and was not disciplined in any way in connection with the Facebook issue. Simpson explained that she contacted Riley because her activities appeared inconsistent with the restrictions Riley had personally described to Simpson. Simpson also explained that the Company wanted to get Riley's input in order to clarify that she was in compliance with the terms of her medical leave. Riley, herself, acknowledged that the Company had a vested interest in confirming that she was complying with the terms of their medical leave; she simply did not like the fact that it was *Simpson and Reed* who called to inquire about her activities. But Riley's personal feelings in this regard are immaterial and do not provide evidence of an FMLA violation. Indeed, the FMLA does not prohibit Chevron Phillips Chemical from investigating potential issues of noncompliance by employees on leave and it certainly does not compel Chevron Phillips Chemical to select certain individuals to investigate issues of potential noncompliance to suit an employee's preferences.

Finally, even assuming Riley was actually planning another leave in December 2016, the summary judgment record shows that Chevron Phillips Chemical had a legitimate reason for Riley's termination—her ongoing performance issues and failure to improve during her PIP. The FMLA does not grant Riley an absolute right to start medical leave, nor does it prohibit Chevron

19

Phillips Chemical from disciplining her for performance issues, including with termination, simply because she took or was planning to take FMLA leave.

Accordingly, there is no basis upon which a fact finder could conclude that Chevron Phillips Chemical did anything to interfere with Riley's rights under the FMLA and her interference claim should be dismissed with prejudice in its entirety.

### C.    Riley's Claim for FMLA Retaliation Fails as a Matter of Law

In the absence of direct evidence, the *McDonnell Douglass* burden-shifting framework applies to FMLA retaliation claims.[122]  Under this framework, Riley must make a prima facie case of retaliation, after which the burden shifts to Chevron Phillips Chemical to articulate a legitimate non-retaliatory reason for its actions.[123]  Once Chevron Phillips Chemical articulates a legitimate non-retaliatory reason for its actions, the burden shifts back to Riley to produce evidence of pretext.[124]  "To survive summary judgment, [Riley] must offer sufficient evidence to create a genuine issue of fact that [the Company's] proffered reason 'is merely a pretext for retaliation.'"[125] As set forth below, Riley cannot make a prima facie case of retaliation and does not have any evidence of pretext.

### 1.    Riley Cannot Make a Prima Facie Case of Retaliation

To establish a prima facie case of retaliation, Riley must show (1) she was protected under the FMLA; (2) she suffered an adverse employment action;[126] and (3) she was treated less

---

[122] *Rodriguez v. Webb Hospital Corp.,* 234 F.Supp.3d 834 (S.D. Tex. 2017).
[123] *Id. at 838-839.*
[124] *Id.*
[125] *Id.; Lanier*, 527 Fed. Appx. at 316.
[126] Riley appears to rely solely on her termination as the adverse action that supports her retaliation claim.  Riley Dep. at 238:1-243:24.  To the extent she relies on any other action, her prima facie case fails because "petty slights, minor annoyances" and other trivial harms do not qualify as adverse employment actions.  *See Rodriguez,* 234 F.Supp.3d at 839.

favorably than an employee who had not requested leave under the FMLA or the adverse action was taken because she sought protection under the FMLA.[127]

With respect to the third element of her prima facie case, Riley must show that there are similarly situated employees outside her protected class who were treated more favorably under nearly identical circumstances.[128]  In the Fifth Circuit, the "nearly identical" standard is a stringent one; that is the comparator employees must have the same job or responsibilities, share the same supervisor, and have the same capabilities, comparable work rule violations and essentially the same disciplinary record.[129]  Riley claims that Simpson treated every other member of the HR team at Cedar Bayou more favorably than she treated her.  But this argument falls flat for a number of reasons.  First, Riley cannot compare herself to other members of the HRBP team who held different positions and had different responsibilities than she had during her employment. Second, even assuming every other member of the HR team is a proper comparator for Riley, there is no summary judgment evidence that any of them had work records that were in any way comparable to Riley's record.  Riley's generalizations, conclusory assertions and subjective opinions that some of her co-workers also made mistakes is not sufficient summary judgment evidence.  Similarly, there is no summary judgment evidence that Riley's alleged comparators were outside the protected class during the relevant time period (*i.e.*, that they did not seek leave under the FMLA).  In fact, the summary judgment record show that Cothren, one of Riley's alleged comparators, also took FMLA leave during the same timeframe but was not terminated.  Thus, Simpson had at least two employees who took FMLA leave during the same time period but they

---

[127] *Lanier,* 527 Fed. Appx at 316.
[128] *See Lee v. Kansas City Southern Ry.,* 574 F.3d 253, 259-260 (5th Cir. 2009); *Rodriguez v. Eli Lilly and Company,* 2015 WL 12930424, *11 (S.D. Tex., June 29, 2015).

[129] *See Lee* 574 F.3d at 259-260; *Rodriguez,* 2015 WL 12930424 at *11.

each had very different disciplinary records.  Moreover, the record is full of evidence of Riley's performance issues, including her own admission that she made mistakes throughout the time period that Simpson was her supervisor.  Given this evidence, there is no basis to conclude that Riley's FMLA activities motivated the decision to terminate her employment.  Because she cannot satisfy the third element of her prima facie case, Riley's retaliation claim fails as a matter of law.

### 2. Chevron Phillips Chemical had a Legitimate, Non-Retaliatory Reason for Riley's Termination

Even assuming Riley could make a prima facie case of FMLA retaliation, her claim still fails because Chevron Phillips Chemical had a legitimate, non-retaliatory reason for her termination.  Specifically, Chevron Phillips Chemical terminated Riley for performance issues, notably her failure to show sufficient improvement while she was under a PIP.  The summary judgment record contains substantial evidence of Riley's numerous performance problems, both before and after she was placed on a PIP.  Indeed, the evidence shows that *after* she was placed on the PIP, Riley continued to repeat some of the exact same mistakes that led to the PIP in the first place.  Performance issues are legitimate, non-retaliatory reasons for disciplinary action, including termination.[130]  Thus, Chevron Phillips Chemical has met its burden at this stage.

### 3. Riley Cannot Show that Chevron Phillips Chemical's Reason for Terminating Her Employment was Pretext for Retaliation

Because Chevron Phillips Chemical has articulated a legitimate, non-retaliatory reason for its action, Riley can only avoid summary judgment if she produces evidence showing pretext.  To establish pretext, Riley must show that Chevron Phillips Chemical's reason is false or "unworthy of credence" and motivated by retaliation.[131]  To satisfy her burden at this stage, Riley cannot rely

---

[130] *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir. 1995); *see also Cox v. Univ. of Texas MD Anderson Cancer Ctr.,* 2010 WL 3825411 (S.D. Tex., Sept. 28, 2010).

[131] *See Francisco v. Sw. Bell Tel. Co.,* 2016 WL 3974820 (S.D. Tex., July 25, 2016), *on reconsideration in part,* 2016 WL 4376610 (S.D. Tex. Aug. 17, 2016), *appeal dismissed,* 2017 WL 6398010 (5th Cir., Jan. 5, 2017).

on unsubstantiated opinions and beliefs or conclusory assertions.[132]  She also cannot rely on sheer temporal proximity or simply disagree with the Company's assessment of her performance and decision to terminate her employment.[133]  Indeed, neither timing alone nor an incorrect belief about an employee's performance is sufficient to establish a retaliatory motive at the pretext stage.[134]  Rather, Riley "must produce *substantial* evidence" that raises a question about the truth of Chevron Phillips Chemical's belief regarding her performance issues and its decision to terminate her employment."[135]  If the summary judgment record shows that Chevron Phillips Chemical would have terminated Riley even in the absence of protected conduct, her claim fails as a matter of law.[136]  As explained below, Riley cannot meet this burden.

Chevron Phillips Chemical terminated Riley's employment because of her ongoing performance issues.  While Riley dismisses her infractions as "minor", there is no summary judgment evidence that Chevron Phillips Chemical viewed them the same.  To the contrary, both Riley and Simpson confirm that Simpson had ongoing "coaching" discussions with Riley about her various errors and other performance deficiencies, both before and after the PIP.  Moreover, the summary judgment record shows that Simpson considered Riley's issues serious enough to warrant a PIP and then worked with Riley to help her improve her performance.  Despite all of this, Riley continued to struggle with multiple job duties and even admitted that Simpson told her that she made serious missteps handling an employee investigation in the weeks leading up to her termination.  Even assuming Simpson was wrong in her assessment about Riley's performance, there is no evidence suggesting that Simpson did not have an honest belief about Riley's

---

[132] *Id.*

[133] *Id.*

[134] *Strong v. Univ. Healthcare System, L.L.C.,* 482 F.3d 802 (5th Cir. 2007).

[135] *Id.; Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 332-333 (5th Cir. 2005).

[136] *See Harville v. Tex. A&M Univ.*, 833 F.Supp.2d 645, 659 (S.D.Tex. 2011)(citing *Rubinstein v. Administrators of Tulane Educ. Fund,* 218 F.3d 392, 402-03 (5th Cir. 2000).

performance problems.[137]   Indeed, Riley admits that Simpson constantly critiqued her and was "nitpicky" about the mistakes she made.[138]

Further, while Riley's termination occurred after she returned from leave and before she started another "potential" leave, this timing alone cannot overcome the overwhelming evidence of Riley's ongoing performance issues and Simpson's assessment regarding her failure to improve.[139]   To the contrary, the summary judgment evidence shows that Simpson extended the term of Riley's PIP to give her sufficient time to improve.  Over the course of approximately two months, Riley continued to display the same type of performance issues that caused Simpson's initial concerns.   Simpson ultimately reached the conclusion that Riley was not improving sufficiently under the PIP when Riley continued to make errors, including the mishandling of an ongoing employee investigation.  While all of this happened after Riley's return from leave and prior to her second "potential" leave, there is simply no evidence, let alone substantial evidence, that Simpson was motivated by Riley's leave as oppose to her performance issues.

Accordingly, Riley cannot meet her burden of showing pretext on Chevron Phillips Chemical's part and summary judgment is warranted on her FMLA retaliation claim.[140]

---

[137] *See Mayberry,* 55 F.3d at 1091 (the question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[138] Riley's insistence that Simpson treated everyone in the Department this way also undermines her argument that Simpson singled her out in any respect.

[139] There are additional reasons to question Riley's retaliation claim, including the fact that none of the complaints she made to the Company following her termination included any allegations of alleged FMLA violations, but instead focused solely on alleged race discrimination.   Given Riley's experience as an HR professional, she certainly understood the importance of identifying her concerns to the Company so that they could be properly investigated. The fact that Riley did not mention the FMLA in her complaints to the Company speaks volumes about the legitimacy of her claims in this lawsuit.

[140] The same arguments made here regarding the Company's legitimate reason for Riley's termination and the lack of substantial evidence of pretext are also applicable to Riley's interference claim and are incorporated there as further evidence that her interference claim fails as a matter of law.

###### D.      Chevron Phillips Chemical is Entitled to Summary Judgment on its Breach of Contract Claim

To prove its breach of contract claim against Riley, Chevron Phillips Chemical must show (1) the existence of a valid contract; (2) performance or tendered performance by the Company; (3) breach of the contract by Riley; and (4) damages caused by Riley's breach.[141]  Whether a contract is enforceable is a question of law.[142]  A valid contract exists when there is (1) an offer, (2) an acceptance, (3) mutual assent, (4) execution and delivery of the contract with the intent that it be mutual and binding, and (5) consideration.[143]  As described below, the summary judgment record shows that Riley breached the terms of a valid contract with Chevron Phillips Chemical.

First, as evidenced by the parties' written agreement, Chevron Phillips Chemical offered and Riley accepted reimbursement for certain tuition expenses related to an online Master's degree program.  Between 2015 and 2016, Riley submitted multiple requests for reimbursement, which Chevron Phillips Chemical accepted and acted upon by making the reimbursements as requested. Under the terms of the parties' agreement, which Riley signed, Riley agreed to repay the Company the full amount of any reimbursements in the event her employment terminated for cause, whether she agreed with the termination or not.[144]  Following the termination of her employment, Riley refused to honor the parties' agreement and has not reimbursed any of the tuition expenses the Company paid on her behalf pursuant to the parties' agreement.[145]  Accordingly, Riley is in breach

---

[141] *Smith Int'l Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir. 2007).

[142] *Allen v. American Gen. Fin., Inc.,* 251 S.W.3d 676 (Tex. App.—San Antonio 2007, pet. granted, judgm't vacated w.r.m.)

[143] *Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632 (Tex. 2007).

[144] Riley understands the meaning of "terminated for cause" and explained that it could include an employee's failure to perform duties.  Riley Dep. at 47:16-49:10.

[145] Riley Dep. at 250:1-251:25.

of the agreement and Chevron Phillips Chemical has lost the full extent of the tuition expenses it paid on her behalf under the agreement, in the total sum of $17,000.[146]

Based on this clear record, summary judgment is warranted in Chevron Phillips Chemical's favor on its breach of contract counterclaim against Riley.

## VI.    CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Chevron Phillips Chemical Company LP respectfully requests that the Court grant its Motion for Summary Judgment, dismiss Plaintiff's claims in their entirety with prejudice, award Chevron Phillips Chemical damages on its breach of contract claim, and grant it such other and further relief, at law and in equity, to which it is justly entitled.

Respectfully submitted,

By:    /s/ *Marlene C. Williams*

Marlene C. Williams
State Bar No. 24001872
Fed ID No. 22824
EVERSHEDS SUTHERLAND LLP
1001 Fannin, Suite 3700
Houston, Texas  77002
(713) 470-6100
(713) 654-1301 (Fax)
marlenewilliams@eversheds-sutherland.com

**ATTORNEYS FOR DEFENDANT CHEVRON PHILLIPS CHEMICAL COMPANY LP**

---

[146] During her deposition, Riley claimed that she does not owe the Company any repayment of her tuition expenses because the Company offered to waive the repayment in exchange for a severance agreement at the time of her termination.  Riley Dep. at 250:1-251:25.  However, Riley admits that she did not accept the terms of the severance agreement that the Company offered to her and, therefore, no agreement to cancel the repayment obligation was ever reached.  *Id.*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on this 15th day of February, 2019, a true and correct copy of the foregoing was served electronically through the Court's ECF system to:

Ellen Sprovach
Gregg Rosenberg
ROSENBERG & SPROVACH
3518 Travis Street, Suite 200
Houston, Texas  77002

/s/ *Marlene C. Williams*
Marlene C. Williams

27