UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MALIKA RILEY, | CIVIL ACTION NO. |
| *Plaintiff* | 4:17-CV-01332 |
| v. | |
| CHEVRON PHILLIPS CHEMICAL CORPORATION, LP. | JURY DEMANDED |
| *Defendant.* | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*/s/ Ellen Sprovach*
Ellen Sprovach
USDC SD/TX No. 22202
Texas State Bar ID 24000672
ROSENBERG & SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
ROSENBERG & SPROVACH

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

**Contents**

TABLE OF CONTENTS ........................................................................................................ 2

TABLE OF AUTHORITIES ................................................................................................ 3

I.    NATURE OF THE CASE ......................................................................................... 5

II.    ISSUES ..................................................................................................................... 5

III.    SUMMARY OF THE ARGUMENT ....................................................................... 5

IV.    FACTS ..................................................................................................................... 6

V.    ARGUMENTS ....................................................................................................... 13

    a.    Summary Judgement Standard ....................................................................... 13

    b.    Ms. Simpson Retaliated against Ms. Riley for taking FMLA ....................... 14

    c.    Ms. Simpson interfered with Ms. Riley's FMLA ......................................... 16

    d.    Defendant does not have a legitimate reason for retaliating and interfering with Plaintiff's FMLA 17

    e.    A fact issue exists whether Ms. Riley breached her contract or whether it was any kind of contract at all ............................................................................................................................ 21

VI.    CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) ........................................ 14, 16

*Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619 (5th Cir. 2000) .......................................... 14

*Arismendiz v. Univ. of Texas at El Paso,* 536 F. Supp. 2d 710, 716 (W.D. Tex. 2008) ............................ 17

*AXA Art Americas Corp. v. Pub. Storage,* 208 F. Supp. 3d 820, 828 (S.D. Tex. 2016) ....................... 22, 23

*Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) ............................. 16

*Carrell v. L & S Plumbing P'ship, Ltd.,* No. CIV.A. H-10-2523, 2011 WL 3300067, at *3 (S.D. Tex. 2011) ........................................................................................................... 22

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) ................................................ 14

*Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013) ................................... 16

*Delao v. VT San Antonio Aerospace, Inc.*, No. SA-17-CV-00139-ESC, 2018 WL 3603067, at *5 (W.D. Tex. 2018) ........................................................................................... 17

*E.E.O.C. v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999) .................................... 21

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 275465, at *7 (E.D. Tex. 2017) ........................................................................................ 24

*Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir. 2001) ......................................... 15

*Faulkenbery v. Lee,* 307 F. App'x 813, 814 (5th Cir. 2009) ........................................... 21

*Garcia v. Penske Logistics, LLC,* 165 F. Supp. 3d 542, 559 (S.D. Tex. 2014) ........................... 15

*iFLY Holdings LLC v. Indoor Skydiving Germany Gmbh,* No. 2:14-CV-1080-JRG-RSP, 2016 WL 3675136, at *1 (E.D. Tex. 2016) ........................................................................... 24

*Jourdan v. Schenker Int'l, Inc.*, 71 F. App'x 308, 310–11 (5th Cir. 2003) ............................ 22

*Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291 (5th Cir. 1987) ............................. 14

*Magdaleno v. PCM Constr. Servs., LLC,* No. H-12-2862, 2014 WL 1760942, at *7 (S.D. Tex. 2014) .... 22

*Markwardt v. United Rentals (N. Am.), Inc.*, No. SA-13-CA-627, 2014 WL 12540713, at *2 (W.D. Tex. 2014) ........................................................................................... 21

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) .................................. 14

*Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) ................ 14

*McCollum v. Puckett Mach. Co.*, 628 F. App'x 225, 231 (5th Cir. 2015) .................................. 16

*McInnis v. Alamo Cmty. Coll. Dist.,* 207 F.3d 276, 279–80 (5th Cir. 2000) ........................... 17, 18

*Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) ............................. 15

*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006) ..................................... 16

*Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.1997) .................................... 15

## Other Authorities

Restatement (Second) of Contracts § 77 cmt. a (1981) *311 ................................................ 21

## Rules

29 C.F.R. § 825.220(b) ................................................................................ 15

Fed. R. Civ. P. 56 (a) ................................................................................ 13

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Malika Riley ("Ms. Riley" or "Plaintiff") files this Response to Defendant's Motion for Summary Judgment, shows as follows:

## I.    NATURE OF THE CASE

Ms. Riley filed her lawsuit against Defendant Chevron Phillips Chemical Corporation, L.P., ("Defendant" or "CP Chem") for Family Medical Leave Act ("FMLA") retaliation and interference.   Defendant transferred and put Plaintiff on a performance plan after she requested FMLA, and ultimately terminated her following her leave, while she was on FMLA and while she had 30 days remaining in her bogus performance plan and after Plaintiff requested FMLA for another surgery. This termination interfered and disallowed Plaintiff to take that protected FMLA to undergo her surgery.  Only after Plaintiff filed her suit, Defendant filed a counterclaim for a breach of contract that is illusory, ambiguous, and comes with unclean hands regarding reimbursement of tuition payments.

## II.    ISSUES

Whether Defendant retaliated against Plaintiff for taking FMLA leave?

Whether Defendant interfered with Plaintiff's FMLA leave?

Whether Plaintiff breached her contract with Defendant?

Whether a valid contract even existed regarding tuition reimbursement payments?

## III.    SUMMARY OF THE ARGUMENT

After a very successful year working for Defendant in 2015, Ms. Riley was transferred out of her role the same day she asked for FMLA leave.  After Ms. Riley requested FMLA and a week before she went out on FMLA leave, Ms. Riley was put on a 90-day performance plan without receiving any previous written warnings about her performance.  While out on FMLA leave,

Defendant contacted Ms. Riley while she was on protected leave Defendant's agent, Melissa Simpson illegally contacted Plaintiff and questioned and grilled her about her personal activities and told her she could work even though her personal activities have nothing to do with her FMLA.

After Ms. Riley returned to work in October 2016, remained on her protected intermittent FMLA leave. About a month later, while Ms. Riley was still on her 90-day performance plan, which would not end until December 28, 2016 (with 30 days remaining), she informed her supervisor that she would be out at an appointment with a new surgeon and informed her supervisor that she would need FMLA shortly. A few days later, that same manager interfered with Ms. Riley's new FMLA leave request and terminated Ms. Riley. Defendant wrongfully terminated Ms. Riley while she was on protected Intermittent FMLA and with 30 days remaining on her Performance Improvement Plan and interfering with her anticipated FMLA.

Defendant's reasons for firing Ms. Riley were fabricated. She was terminated, transferred, and put on a performance plan for taking FMLA leave.

## IV.    FACTS

Ms. Riley was hired by Defendant on January 19, 2015 as an HR Business Partner in the Operations department at the Cedar Bayou Facility in Baytown, Texas.[1] When Ms. Riley applied for the position with Chevron Phillips Chemical Corporation, LP., she informed the company that she would need to take classes towards her masters because the requirements for the position referenced a master's degree.[2] Once Chevron Philips Chemical Corporation, LP. hired her, Ms. Riley entered the master's program in order to fulfill the requirements for her position.[3]

---

[1] Melissa Simpson Deposition ("Depo.") p.7, Exhibit A; Equifax Sheet, Exhibit B
[2] Riley Declaration, Exhibit L
[3] Riley Declaration, Exhibit L

Ms. Riley also requested tuition reimbursement based on fulfilling the requirements for the position.[4]

Ms. Riley had no intention of otherwise going back to school and getting a master's degree.[5] She only got a master's degree for her job at CP Chem.

Because of her excellent job performance in her role during 2015, in early 2016, Defendant awarded her a bonus and said she met expectations.[6] According to her 2015 Performance Review, Ms. Riley added value to her team, was eager to learn, helped create three significant policy updates, and had a positive influence on her team.[7] After a year of positive feedback and success, Ms. Riley's supervisor changed from Ms. Julie Fleet to Ms. Melissa Simpson.[8] Just months later, and after protected FMLA and prior to the end of 2016, Ms. Simpson terminated Ms. Riley for poor performance.[9]

On February 8, 2016, Ms. Riley's glowing 2015 performance review was released.[10] Ms. Simpson had joined the team and became Ms. Riley's new supervisor in January of 2016 and was added to the performance review even though she did not manage Ms. Riley during 2015.

On February 19, 2016, Ms. Riley sent an email to Ms. Simpson asking for a leave of absence for an upcoming surgery.[11] Ms. Simpson testified that she understood that to mean that Ms. Riley was requesting FMLA.[12] Ms. Simpson now illegitimately claims that Ms. Riley was transferred because of performance concerns, to provide the customer groups the support they

---

[4] Riley Declaration, Exhibit L
[5] Riley Declaration, Exhibit L
[6] Simpson Depo. p.43, Exhibit A
[7] 2015 performance Review, Exhibit C
[8] Simpson Depo. pp. 7 and 42, Exhibit A
[9] Simpson Depo. pp. 8, 61, 63, 110, Exhibit A
[10] 2015 performance Review, Exhibit C
[11] Simpson Depo. pp. 56-57 , Exhibit A; Riley Email February 19, 2016, Exhibit E
[12] Simpson Depo. pp. 56-57 , Exhibit A

needed, and to align the needs with the size of the group with the skill sets of the business partners.[13] Ms. Simpson was more than aware of Ms. Riley's success in her position, yet on February 19, 2016, the same day Ms. Riley requested FMLA, Ms. Simpson requested permission to transfer Ms. Riley from operations to technical.[14] Ms. Simpson now claims that Ms. Riley was struggling in the investigation, discipline, compensation, and employee move-related items processes.[15]

To the contrary, even with all of these alleged concerns, Ms. Simpson never put it in writing that Ms. Riley was being transferred because she was struggling or needed to improve in these areas, in fact it was an organizational change.[16] On the same day and immediately after Ms. Riley requested FMLA, Simpson moved her. Most importantly, Malika Riley's lead contact in operations told her the group would miss her and that she could come back any time.[17]

Chevron wholly failed to train Ms. Riley for her new position.[18] There was no formal transfer of job duties and title between Ms. Cochran and Ms. Riley, the other person moved.[19] In fact, an announcement was never made that Kristin Cochran and Ms. Riley switched roles.[20] Because nothing was done formally, it took a lot of time for the two women to switch files and responsibilities.[21]

Ms. Riley went out on FMLA on July 7, 2016 for surgery.[22] About one week prior to the surgery, and after being notified of the FMLA request, Ms. Simpson put Ms. Riley on a 90 day

---

[13] Simpson Depo. p. 32, Exhibit A
[14] Simpson Depo. pp.32, 55-56, Exhibit A; Position Statement, Exhibit D
[15] Simpson Depo. p. 45, Exhibit A
[16] Simpson Depo. pp. 31-32, 37, 49 , Exhibit A
[17] November 28, 2016 email, Exhibit I
[18] Riley Declaration, Exhibit L
[19] Riley Declaration, Exhibit L
[20] Riley Declaration, Exhibit L
[21] Riley Declaration, Exhibit L
[22] Simpson Depo. p. 59, Exhibit A; Riley Declaration, Exhibit L

performance plan ("PIP") despite her previous excellent work history.[23]  Ms. Simpson forced Ms. Riley to sign the document whether she agreed to the claims or not and also forced her to write a Correct Action Plan on how she would improve her performance.[24]

At the time, Ms. Riley was still taking classes for her job, so she asked Ms. Simpson if the PIP would affect her tuition reimbursement. Ms. Simpson told Ms. Riley that the PIP would not affect her tuition reimbursements.[25] Ms. Simpson told Ms. Riley that she could continue to take classes and that CP Chem would pay for them.[26]  Ms. Simpson did not inform Ms. Riley that failing to complete the PIP would result in her termination.[27]  Chris Reed, Business Partner, was present at the meeting and told Ms. Riley that he did not agree with the PIP and was very encouraging and reassuring.[28]

Defendant claims that Ms. Riley was put on a PIP because committed a number of errors in her new role between May and June 2016.  *See Defendant's Motion for Summary Judgment p.8.* However, these email show nothing more than either simple errors or are evidence of others failing to perform their own job duties.

- Emails from May 3, 2016 to May 10, 2016 (CPCRiley000188-196) address a situation in which Dave Schwierman's TSC form salary information was filled out improperly, but which Ms. Riley corrected and notified Ms. Simpson about.  <u>Ms. Simpson did not have to correct it.</u>

- Emails around May 18, 2016 (CPCRiley000170-171) revolve around the issues Ms. Riley faced during her transition into the Technical Role.  Kristin Cochran, whom she switched jobs with, told her that she should send in an email draft of the managed moves request template for justification on Mr. James' move.  Ms. Cochran told her to leave space for the information that needed to be added.  Ms. Cochran informed her that this is what she had done in the past and that she sent the information to Cristan Morales.  No one told Ms. Riley that she needed to set

---

[23] Simpson Depo. pp. 75-76, Exhibit A; PIP, Exhibit M
[24] Riley Declaration, Exhibit L
[25] Riley Declaration, Exhibit L
[26] Riley Declaration, Exhibit L
[27] Riley Declaration, Exhibit L
[28] Riley Declaration, Exhibit L

up a meeting with anyone in order to complete this task before she emailed it.

- The email from May 19, 2016 (CPCRiley000163) is not an email that Ms. Riley saw when sent. However, she did reach out to Natasha Philpot when she needed information that she did not have access to. Ms. Philpot had told Ms. Riley previously that if she ever needed anything to reach out to her. It was not until after this instance that Ms. Riley was told by Ms. Simpson that she should not talk to corporate unless her request went through Ms. Simpson first. Ms. Simpson wholly failed to instruct Ms. Riley not to speak to corporate unless her request went through her first.

- Emails around May 23, 2016 and May 25, 2016 (CPCRiley000165-169) involve the announcement of incoming interns on the Cedar Bayou home page website. It was actually Melissa Simpsons' job duty to post announcements on the home page, not Ms. Riley's. In fact, the email shows Ms. Simpson asking Ms. Riley who was responsible for handling this task and Ms. Riley responded that it was Julie Fleet, Ms. Simpson's predecessor.

- Emails from May 25, 2016 (CPCRiley000179-180) involve issues with EthicsPoint. Beth Roberts, Administrator, told Ms. Riley that several employees were having problems with EthicsPoint due to systems issues. Ms. Simpson was aware of the issues.

- The email from June 14, 2016 (CPCRiley000164) is from Ms. Riley asking Jennifer Bauer, the hiring manager, and Melissa Simpson, the HR Manager how they would like to proceed with a request for accommodations. It is the job duty of the hiring manager and the HR manager to decide whether or not to approve or deny an accommodation request. It was never Ms. Riley's duty to make a decision about accommodations nor did she have the authority to do so. Any contention that she had such ability is false.

- Ms. Riley only ever answered her phone twice while in a meeting at CP Chem. Once was an urgent message on her work phone from a colleague during a staff meeting. Because it was an urgent work message, she responded during the meeting. The second time was when her young son's school called because he was injured at school. Ms. Riley simply stepped out of a client group meeting to take the call and returned shortly after.[29]

Ms. Riley had intended on returning to Chevron Phillips Chemical Corporation, LP. on

August 1, 2016, but was forced to take additional leave due to blood clot complications that forced

---

[29] Riley Declaration, Exhibit L (all bullet points on pp.9-10)

her into 6 days of intensive care.[30]  Ms. Riley did not return to the office until October 11, 2016, and she remained on intermittent FMLA leave upon her return.[31]

In September 2016, while Ms. Riley was still out of the office on FMLA leave, Ms. Simpson violated Ms. Riley's Family Medical Leave and Defendant's own policy and contacted Ms. Riley regarding her about her activities outside of the office.[32]  The call was in reference to a report by a co-worker named Kristin Cothren that Ms. Riley was posting pictures of herself at her son's sports games.[33]

Although Ms. Simpson is not a doctor, nor is she in anyway a part of Defendant's FMLA process, she decided she needed clarification on Ms. Riley's restrictions because she inferred that Ms. Riley was doing something that was possibly fraudulent or unlawful.[34]  Although Ms. Simpson is aware that <u>FMLA relates solely to restrictions with employment,</u> she crossed the lines and the law and called Ms. Riley on September 29, 2016 about her non-work related activities, clearly with a negative perception and animus.[35]  To make matters worse, Ms. Simpson repeatedly called Ms. Riley while she was out on leave and asked her to explain why she couldn't come back to work and wanted to know why she couldn't prop her leg up on a chair in the office.[36]

Ms. Riley returned to work on October 11, 2016.[37]  From this date forward, CP Chem claims that Ms. Riley made the same performance errors she made prior to going on leave.  *See Defendant's Motion for Summary Judgment pp.14-15.*

---

[30] Simpson Depo. p. 60, Exhibit A
[31] Simpson Depo. pp. 60-61 , Exhibit A; Riley Declaration, Exhibit L
[32] Simpson Depo. pp. 68,72, Exhibit A
[33] Simpson Depo. pp.  68, 72-73  , Exhibit A
[34] Simpson Depo. pp. 67, 76, 83, 101, Exhibit A
[35] Simpson Depo. pp. 69 , Exhibit A; Summary of Call about Facebook Post, Exhibit F
[36] Riley Declaration, Exhibit L.
[37] Simpson Depo. pp. 60-61 , Exhibit A, Riley Declaration, Exhibit L

- On October 21, 2016, Ms. Riley sent Ms. Simpson a proposal for Eren Palmer.[38]  Ms. Simpson only suggested a change be made, but did not coach Ms. Riley for any issues on this proposal.[39]

- On October 30, 2016, Ms. Riley asked Ms. Simpson a question about whether Mr. Schaefer qualified for Metro Relocation.[40]  Ms. Simpson directed her to a company policy that Ms. Riley was aware of and explained that she had already reviewed it and the information she was looking for was not in it.[41]  Ms. Simpson did not coach Ms. Riley for asking her this question.[42]

- On November 18, 2016, Ms. Simpson sent an email asking if an investigation was loaded into EthicPoint.[43]  The email states that Ms. Riley has already uploaded the information but that there was possibly an error in the upload because of the issues frequently faced when using EthicsPoint.[44]  There is no evidence that Ms. Simpson ever disciplined Ms. Riley because of this incident.

- Ms. Riley was responsible for an investigation into Mr. Byerly's claims.[45]  Mr. Byerly had several claims against Chevron Phillips Chemical Corporation, LP. and had taken FMLA.[46]  Ms. Simpson pushed Ms. Riley to terminate him.[47]  The investigation report took longer than usual because Ms. Simpson kept changing the requirements for what she wanted in the report.[48]  She did this so many times that Chris Reed commented to Ms. Riley that what she wanted didn't make sense.[49]

On November 16, 2016, Ms. Riley sent an email to Ms. Simpson stating that she had a doctor's appointment with a new surgeon that coming Friday and that she would need additional Family Medical Leave.[50]  A few days following this email, Ms. Simpson sent Maricela Caballero and email recommending Ms. Riley's termination.[51]  Ms. Riley was terminated on November 28,

---

[38] Riley Declaration, Exhibit L; October 21, 2016 emails, Exhibit N
[39] Riley Declaration, Exhibit L.
[40] Riley Declaration, Exhibit L; October 30, 2016 emails, Exhibit O
[41] October 30, 2016 emails, Exhibit O
[42] Riley Declaration, Exhibit L.
[43] November 18, 2016 emails, Exhibit P
[44] Riley Declaration, Exhibit L; November 18, 2016 emails, Exhibit P
[45] Byerly Emails, Exhibit Q
[46] Riley Declaration, Exhibit L
[47] Riley Declaration, Exhibit L
[48] Riley Declaration, Exhibit L
[49] Riley Declaration, Exhibit L
[50] Email November 16, 2016, Exhibit G
[51] Simpson Depo. p. 110 , Exhibit A; Termination request, Exhibit H

2016, a few days after stating that she would be visiting with a new surgeon and needing additional FMLA time.[52]  At the time, Ms. Riley still had about a month left on her performance plan[53] and she had another surgery coming up that Ms. Simpson was aware could result in her taking more FMLA leave.[54]  Ms. Riley's was still on intermittent FMLA leave at the time Defendant terminated her. [55]

Ms. Simpson asked Ms. Riley to sign a severance agreement, after she was terminated, in order for her to be paid for unused vacation and so that her tuition reimbursements would be forgiven.[56] Ms. Riley was entitled to pay for her unused vacation regardless of whether she signed the severance agreement.[57] Ms. Riley complained to the payroll department that Ms. Simpson was withholding pay for her unused vacation, and they informed her that she was entitled to it regardless of whether she signed the agreement.[58] CP Chem did not ask Ms. Riley to return any tuition reimbursements she received when she was terminated nor did CPChem ever tell Plaintiff that she was fired for cause. [59] Defendant wholly failed to make any internal designation that they fired Plaintiff for cause.[60]

## V.     ARGUMENTS

### a.  <u>**Summary Judgement Standard**</u>

---

[52] Simpson Depo. pp. 8 and 120 , Exhibit A
[53] The end date of the 90 day performance plan was moved to December 28, 2016 after Ms. Riley went on leave. Simpson Depo. pp. 76, Exhibit A
[54] Simpson Depo. pp. 8, 63, 111, 114-115, 120-121 , Exhibit A
[55] Riley Declaration, Exhibit L
[56] Riley Declaration, Exhibit L
[57] Riley Declaration, Exhibit L
[58] Riley Declaration, Exhibit L
[59] Riley Declaration, Exhibit L
[60] Equifax Sheet, Exhibit B

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56 (a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The movant, "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf Inc., v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp.,* 477 U.S. at 477).

Under Federal Rule of Civil Procedure 56(a), the moving party bears the initial burden of "informing the district court of the basis for the motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291 (5th Cir. 1987). If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Alan v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citation omitted).

### b. <u>Ms. Simpson Retaliated against Ms. Riley for taking FMLA</u>

Defendant, through Ms. Simpson, retaliated against Ms. Riley for taking FMLA when it terminated her employment. To prove FMLA retaliation, the employee must demonstrate: "1) she was protected under the FMLA; 2) she suffered an adverse employment action; and 3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA." *Acker v. Gen. Motors, L.L.C*., 853 F.3d 784, 790 (5th Cir. 2017); quoting *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). The third element requires the employee to

show "there is a causal link" between the FMLA-protected activity and the adverse action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination. *Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 559 (S.D. Tex. 2014). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Id.*; quoting *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.1997) (citation omitted); *see also Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir. 2001) (noting that a time lapse of four months has been held sufficient to establish a plaintiff's *prima facie* case).

<u>In Ms. Riley's case there is zero time between the request for leave, the leave and the illegal action: MS. RILEY WAS STILL ON FMLA WHEN DEFENDANT FIRED HER.</u>

In Ms. Riley's case, it is clear that she was protected under FMLA because she returned from FMLA in October 2016 and was on granted intermittent FMLA from the date of her return until December 2016.[61] Ms. Riley suffered an adverse employment action when she was terminated on November 28, 2016, *while still on protected leave*.[62] Finally, Ms. Riley was terminated one month after returning from FMLA leave and during a time in which Ms. Simpson was told she would potentially take more FMLA leave and when Ms. Riley was *still on protected Family and Medical Leave.* [63] It is important to note that at the time Defendant fired Ms. Riley, she had 30 days remaining on her plan. Therefore, it is clear that Ms. Simpson retaliated against Ms. Riley for taking FMLA leave.

---

[61] Simpson Depo. pp. 60-61 , Exhibit A; Riley Declaration, Exhibit L
[62] Simpson Depo. pp. 8 and 120 , Exhibit A
[63] Simpson Depo. pp. 8, 60-61, 120-121 , Exhibit A

### c. __Ms. Simpson interfered with Ms. Riley's FMLA__

To establish a *prima facie* case of interference, Plaintiff had to show that (1) she was an eligible employee, (2) she was subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, (5) the Defendant interfered with the benefits to which she was entitled under the FMLA, and (6) she was prejudiced as a result. *McCollum v. Puckett Mach. Co.*, 628 F. App'x 225, 231 (5th Cir. 2015).

To prove an interference claim, a plaintiff "must at least show that [the defendant] interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him]." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013)). An "interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA." *Acker*, 853 F.3d at 788; quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006).

The FMLA does not define "interference," but Department of Labor regulations provide that interference with the exercise of an employee's rights includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.[64] 29 C.F.R. § 825.220(b).

Here, it is clear that Ms. Riley was an eligible employee who was entitled to leave and that Defendant was subject to FMLA requirements because Ms. Riley was allowed FMLA leave while

---

[64] Please note that the caselaw used by Defendant in its motion for summary judgment p.18 does not say what it claims. *Shirley v. Precision Cast Parts Corp.*, 726 F.3d 765, 683 (5th Cir. 2013) discusses how a legitimate business reason can extinguish an FMLA claim. *Grubb v. Sw. Airlines*, 296 Fed. Appx. 383, 391 (5th Cir. 2008) says an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Smith-Schrenk v. Genon Services, L.L.C.*, 2015 WL 150727 (S.D. Tex. 2015) concerns and employer asking questions about work related matters while the employee is on leave.

employed, and because Defendant worked with third party provided UPMC.[65] It is also clear that Ms. Riley properly gave notice of her FMLA leave because she emailed Ms. Simpson about her leave sometimes months in advance and because she was approved for intermittent leave when she came back to work in October 2016 which she was valid until through December 2016.[66] Finally, Ms. Simpson knew that Ms. Riley was going to have another surgery that would require her to take FMLA prior to terminating her.[67] Ms. Simpson interfered with Ms. Riley's FMLA by firing her before she was able to take it. If Ms. Riley had been permitted to take her leave, her position would have been protected and she would have had the opportunity to complete her 90 day PIP.[68] Therefore, it is clear that Ms. Simpson interfered with the benefits Ms. Riley was entitled to under the FMLA.

### d. Defendant does not have a legitimate reason for retaliating and interfering with Plaintiff's FMLA

The Fifth Circuit applies the *McDonnell Douglas* framework to analyze FMLA retaliation and interference claims that rely on circumstantial evidence. *Arismendiz v. Univ. of Texas at El Paso*, 536 F. Supp. 2d 710, 716 (W.D. Tex. 2008) *Delao v. VT San Antonio Aerospace, Inc.*, No. SA-17-CV-00139-ESC, 2018 WL 3603067, at *5 (W.D. Tex. 2018). Once the plaintiff makes his *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000). Once the employer articulates such a reason,

---

[65] Simpson Depo. pp. 60-61, 67-68, 77 , Exhibit A
[66] Simpson Depo. pp. 60-61, 67-68, 77 , Exhibit A; Riley Email February 19, 2016, Exhibit E; Email November 16, 2016, Exhibit G; Riley Declaration, Exhibit L
[67] Simpson Depo. p. 121, Exhibit A
[68] Simpson Depo. p. 69, Exhibit A

the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination. *Id*.

Defendant's reason for terminating Ms. Riley is that she was allegedly performing her job poorly.[69] However, there is plenty of evidence to show that Ms. Simpson recommended the termination of Ms. Riley based on the fact that she was taking FMLA, and that the reason provided by Plaintiff is pretext for retaliation and interference. First, after having a very successful first year with Defendant, Ms. Riley was transferred to another job position the same day that she informs Defendant she will be taking a leave of absence/FMLA.[70]

**Defendant never disciplined or wrote Ms. Riley up for any reason.**

Second, one week before Ms. Riley left to go on FMLA leave, she is put on a 90-day PIP by Ms. Simpson without prior notice warning or discipline.[71] In fact, the most recent performance evaluation of Riley showed that she earned a bonus for her good work and she fully met expectations.[72] The only catalyst and difference were Ms. Riley's FMLA request. Additionally, and importantly, all of the emails used to show Ms. Riley's poor performance by Defendant reflect minor errors or responsibilities of other employees that were not properly handled.[73]

Third, while Ms. Riley was on FMLA leave, Ms. Simpson took it upon herself to contact an employee who was on protected leave and grill her regarding personal activities.[74] The FMLA process followed by Defendant is that the employee contacts UPMC, it works the case, and also provides notifications to the supervisor and the HR business partner[75] As a policy, Defendant also

---

[69] Termination request, Exhibit H
[70] Simpson Depo. pp.32, 55-56 , Exhibit A; 2015 performance Review, Exhibit C; Position Statement, Exhibit D
[71] Simpson Depo. pp. 75-76, Exhibit A; PIP, Exhibit M
[72] 2015 performance Review, Exhibit C
[73] Riley Declaration, Exhibit L
[74] Summary of Call about Facebook Post, Exhibit F
[75] Simpson Depo. p. 67, Exhibit A

asks that the employee check in on a periodic basis with their managers.[76] Ms. Riley was approved

by UPMC and regularly checked in with her manager.[77] Additionally, Ms. Simpson repeatedly

called Ms. Riley while she was out on leave and asked her to explain why she couldn't come back

to work and wanted to know why she couldn't prop her leg up on a chair in the office.[78] Ms.

Simpson **has no part or duties in the FMLA process** that approved Ms. Riley for FMLA nor did

she work with Ms. Riley's doctors to figure out her restrictions or leave.[79] Yet, she decided that

Ms. Riley was possibly doing something fraudulent or unlawful so she got involved.[80]

Even though Ms. Simpson never memorialized in writing any of her problems with Ms.

Riley's performance, a transcript was created of the call she had with Ms. Riley concerning her

personal activities while on FMLA leave.[81] Her involvement and decision to have the meeting

transcribed indicate that she found it more important to report to the company Ms. Riley's conduct

outside work than her alleged failings while at work. This demonstrates a discriminatory animus

to Ms. Riley being on protected Family Medical Leave.

Fourth, Ms. Riley was terminated while she still had 30 days left on her performance plan.[82]

If Ms. Riley was truly terminated because of her poor performance, it would make since for the

company to follow its own policies and procedures for terminating her. Instead, Defendant put

Ms. Riley on a 90 day PIP that she was not allowed to complete. Ms. Simpson wholly failed at

any time to inform Ms. Riley that she was not meeting her plan.

---

[76] Simpson Depo. pp. 67-68 , Exhibit A; September 14, 2016 email, Exhibit J
[77] Simpson Depo. pp. 67-68, 77 , Exhibit A
[78] Riley Declaration, Exhibit L.
[79] Simpson Depo. pp. 77, 81, Exhibit A
[80] Simpson Depo. p.83, Exhibit A
[81] Simpson Depo. pp.111-112, 116, 120, Exhibit A Summary of Call about Facebook Post, Exhibit F
[82] Simpson Depo. pp. 114-115 , Exhibit A

Suspiciously a few days before Ms. Simpson recommended Ms. Riley for termination; she was informed by Ms. Riley that she would be seeing another surgeon and would need additional leave [83] Ms. Simpson testified that she knew that Ms. Riley needed more surgery at the time of her termination and that that surgery could result in FMLA leave.[84] Ms. Simpson fired Ms. Riley while she remained on Family Medical Leave.[85]

Fifth, after Ms. Riley's termination, Defendant filed paperwork characterizing Ms. Riley's termination as a voluntarily resignation and sent out emails saying the same.[86] These are contrary to Defendant's characterization that Malika was fired for cause. These documents indicate that Defendant knew that terminating Ms. Riley was improper and did not want others to know what it had done.

Sixth, and finally, Chris Orsak, HR Manager, was terminated immediately after he returned from FMLA leave. This occurred about 5 months before Ms. Riley was terminated.

Based on the timing of Ms. Riley's transfer and her first request for FMLA, being placed on a performance plan one week before leaving for FMLA, Ms. Simpson's refusal to memorialize any of the issues she was having with Ms. Riley's work performance, her wrongful investigation into Ms. Riley's leave, Defendant's failure to follow their own performance plan, the timing of Ms. Riley's termination to her future FMLA leave, sending out false information about her termination, and Defendant's practice of firing others after immediately returning from FMLA, it is clear that Defendant's reason for terminating Ms. Riley is pretext for FMLA retaliation and interference. At the very least, this is a swearing match—a factual dispute which must be resolved

---

[83] Email November 16, 2016, Exhibit G
[84] Simpson Depo. p. 121, Exhibit A
[85] Riley Declaration, Exhibit L
[86] Equifax Sheet, Exhibit B; November 28, 2016 email, Exhibit I; Termination Checklist – Supervisor, Exhibit R

by the ultimate fact finder, not by the judge on summary judgment. *E.E.O.C. v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999); *Faulkenbery v. Lee*, 307 F. App'x 813, 814 (5th Cir. 2009).

**e. A fact issue exists whether Ms. Riley breached her contract or whether it was any kind of contract at all.**

In Defendant's counterclaim and Motion for Summary Judgment, it argues that Ms. Riley breached her contract with Defendant by failing to repay for tuition reimbursements previously covered by Defendant. The alleged contract, which is not a contract, states:

> As evidence by my signature below, I agree to the terms and conditions outlined in the Educational Refund Policy. In addition, I understand and agree that Chevron Phillips Chemical Company (the Company) may deduct money from my pay, including my final paycheck, to repay amounts received under the Educational Refund Policy, if I voluntarily terminate my employment within a two (2) year period following my completion of the last undergraduate or advanced degree course, or if my employment is terminated **for cause (determined by the Company in its sole discretion)**. Pay includes all sums, benefits or payments which the Company may owe to me, including compensation for unused vacation, bonus or severance payments. I further agree to reimburse the Company by personal check, cashier's check or money order for any amount owed which was not obtained through payroll deduction.[87]

Ms. Riley did not breach the contract with Defendant because this is not a valid contract.

The elements of a breach of contract claim in Texas are (1) the existence of a valid and enforceable contract, (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff because of the breach. *Markwardt v. United Rentals (N. Am.), Inc.*, No. SA-13-CA-627, 2014 WL 12540713, at *2 (W.D. Tex. 2014).

A valid contract does not exist between Ms. Riley and Defendant because Defendant's promise is illusory. When illusory promises are all that support a purported bilateral contract,

---

[87] Educational Refund Application and Policy, Exhibit K

there is no mutuality of obligation, and therefore, no contract. *Carrell v. L & S Plumbing P'ship, Ltd.*, No. CIV.A. H-10-2523, 2011 WL 3300067, at *3 (S.D. Tex. 2011). An illusory promise, at common law, "is neither enforceable against the one making it, nor ... operative as a consideration for a return promise *Jourdan v. Schenker Int'l, Inc.*, 71 F. App'x 308, 310–11 (5th Cir. 2003). Thus, it has long been held that where the condition of a promise lies solely within the promisor's power, the promisor, not being bound to a course of conduct, cannot be said to have entered into a contract. *See* Restatement (Second) of Contracts § 77 cmt. a (1981) *311 ("Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise."). *Id.*

Courts have held that an arbitration policy was illusory because it applied only to claims brought by employees and allowed employer in its "sole discretion, to change, revise or eliminate any of its policies as described [t]herein" [emphasis ours] *Magdaleno v. PCM Constr. Servs., LLC*, No. H-12-2862, 2014 WL 1760942, at *7 (S.D. Tex. 2014).

Here, Defendant's performance was entirely optional because it could decide at its **"sole discretion" [emphasis ours]** whether or not Ms. Riley was terminated for cause and force her to repay the tuition payments regardless of the events. Defendant was not bound to its promise to reimburse Ms. Riley for tuition because it could decide at any time that her termination could be based on cause and therefore nullify the agreement. Because Defendant was not bound to its promise in any way, its promise is illusory. Due to Defendant's illusory promise, there is no valid contract.

Additionally, and alternatively, the contract is ambiguous. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *AXA Art Americas Corp. v. Pub. Storage,* 208 F. Supp. 3d 820, 828 (S.D. Tex. 2016).

Ambiguity arises "only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of ... two meanings is the proper" one. *Id*. If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Id*. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Id*. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Id*.

Here, "for cause" is ambiguous because it does not have a definite meaning. In fact, according to the contract, Defendant can in its "sole discretion" decide what ever meaning it feels like giving to "for cause." Because "for cause" – **it can be anything or it can be nothing** - does not have a definite meaning, it is ambiguous and is an issue that should be heard by a jury.

It is also important to note that a fact issue exists regarding how Ms. Riley was separated from her employment. According to **only** Defendant's counterclaim, Ms. Riley was terminated for cause, yet the paperwork produced by Defendant at the time she was separated and remains in its records indicates that she resigned from her position.[88] This could only be an involuntary resignation, an exception to Defendant's definition of who has to pay back tuition as Defendant's only two reasons for payback are voluntary separation or separation for cause. An involuntary resignation would be neither. [89]

Additionally, Ms. Simpson stated in her request to terminate Ms. Riley that she would be provided the opportunity to resign from her employment and sign a release from liability in

---

[88] Equifax Sheet, Exhibit B; November 28, 2016 email, Exhibit I; Termination Checklist – Supervisor, Exhibit R
[89] Exhibit K.

exchange for not requiring the repayment of her tuition.[90] A jury must determine the characterization of the separation of Ms. Riley's employment.

It is also a fact issue for the jury whether Defendant had unclean hands by firing Ms. Riley wrongfully and in violation of the Family Medical Leave Act. The doctrine of unclean hands is based on the maxim that "he who comes into equity must come with clean hands." *iFLY Holdings LLC v. Indoor Skydiving Germany Gmbh*, No. 2:14-CV-1080-JRG-RSP, 2016 WL 3675136, at *1 (E.D. Tex. 2016). To prove the defense of unclean hands, the movant must show that the nonmovant conducted itself so as to shock the moral sensibilities of the judge, or stated otherwise, that the nonmovant's conduct was offensive to the dictates of natural justice. *Id.* To successfully invoke the unclean hands doctrine, the defendant must point to an unconscionable act by the patentee that has an "immediate and necessary relation to the equity" of the relief that the patentee seeks. *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 275465, at *7 (E.D. Tex. 2017). The Fifth Circuit has held that proof of nexus requires a showing that the defendant (Ms. Riley) was injured by the wrongful conduct. *Id.* at *8. Here, CP Chem wrongfully terminated Ms. Riley for taking FMLA leave and then used that wrongful termination as a way to claim breach of contract damages. Ms. Riley is damaged because the wrongful termination allegedly triggers a requirement that she pay back tuition reimbursements. Therefore, a fact issues exists whether Chevron Phillips Chemical Corporation, LP. has clean hands.

Defendant terminated Ms. Riley while she was still working on her 90- day PIP and within a timeframe in which she had just taken FMLA leave, was planning on taking more, and remained on intermittent protected Family Medical Leave. Ms. Riley was not terminated for cause, she was

---

[90] Termination request, Exhibit H; Riley Declaration, Exhibit L

terminated because of Melissa Simpson's overreach of the law at the very least. A fact issue exists whether Ms. Riley was terminated for cause.

## VI. CONCLUSION

Based on the above-mentioned facts and evidence, Plaintiff has shown that Defendant retaliated and interfered against Plaintiff for requesting and taking Family Medical Leave. Further, Plaintiff has established that she does not owe a tuition reimbursement.

Respectfully submitted,

*/s/ Ellen Sprovach*
Ellen Sprovach
USDC SD/TX No. 22202
Texas State Bar ID 24000672
ROSENBERG & SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
ROSENBERG & SPROVACH

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

       I served a copy of this document by means of electronic transmission, on the 22nd day of March 2019.

       Marlene C. Williams
Eversheds Sutherland
1001 Fannin St #3700
Houston, TX 77002
**(713) 470-6100 – Telephone**

*<u>/s/ Ellen Sprovach</u>*
Ellen Sprovach